366 A.2d 1243
**In re Robert EBO.**
**Appeal of William FORBES.**
Superior Court of Pennsylvania.
Argued Nov. 11, 1976.
Decided Dec. 15, 1976.

164

Arthur G. Gilkes, Jr., Bryan Campbell, Pittsburgh, for appellant.

No appearance entered nor brief submitted for appellee.

Before WATKINS, President Judge, and JACOBS, PRICE, VAN der VOORT, and SPAETH, JJ.

JACOBS, Judge:

This is an appeal from an order of the lower court which found Detective William Forbes, a Pittsburgh police officer, in contempt of court. We are convinced that this order was improper, and reverse.

On May 17, 1976, three juveniles appeared before Judge Livingstone Johnson regarding some twenty-eight charges of purse snatching. Appellant as one of three prosecuting officers, was present at this hearing. Due to a determination that a confession of one of the youths was inadmissible, all but three of the charges were dismissed. A hearing on the disposition of the remaining charges was later set for June 7, 1976. On June 6, 1976, an article appeared in *The Pittsburgh Press*, concerning the May 17 hearing and the dismissal of the charges on that date. The article contained the names and addresses of the juveniles, and described the May 17 hearing.

On the following day when the hearing on the remaining charges was convened, Judge Johnson, concerned that the confidentiality provisions of the Juvenile Act [1] may have been violated, undertook a somewhat unique investigation to determine the source of this article. Present at the hearing, among others, were the three juveniles and their attorneys, seven of the juveniles' relatives, two court officials, and the three prosecuting officers, including appellant. After the witnesses were sworn, Judge Johnson ordered the three juveniles to sit elsewhere in the courtroom, and ordered the three prosecuting officers to sit in the seats previously occupied by the juvenile defendants. Printed Record at 4a. The Judge then read the newspaper article to the three officers, and proceeded to interrogate them for some time concerning the possibility of their involvement with the article. Printed Record at 5a–18a. It is clear from the record that Judge Johnson believed that either one or all of the prosecuting officers bore the responsibility for the release of the information to the press, and even threatened appellant with contempt charges as a result of this article being published. Printed Record at 18a. The following exchange took place at the conclusion of Judge Johnson's questioning of the three prosecuting officers:

"DET. FORBES: Do we get to answer any of this, Judge; or do we just sit here?

"THE COURT: Certainly you get to answer it.

"DET. FORBES: Whenever I get to answer it you let me know.

"THE COURT: Certainly you get the chance to answer it, because this is the last chance you will get to act in contempt of this Court without being formally charged. You have a right to show why you shouldn't be held in contempt, brought before this Court, and then given your Constitutional rights and a full hearing, and fair disposition thereafter.

1. Act of December 6, 1972, P.L. 1464, No. 333, § 1 *et seq.*, 11 P.S. § 50–101 *et seq.* (1976).

"DET. FORBES: Well, if you feel I am entitled to just what you are talking about, Judge, then I would suggest you go ahead and do that.

"THE COURT: That's my opinion. That's what you suggest?

"DET. FORBES: If you are implying—

"THE COURT: I am not implying anything. I am giving you a warning, and if you are smart you will take it.

"DET. FORBES: If you are implying I wrote that statement and had something to do with that statement—

"THE COURT: If you are smart, you will take it. Now, you keep talking, I will hold you in contempt for your conduct here.

"DET. FORBES: I take it you won't let me talk, Judge, so I guess I can't talk.

"THE COURT: I will tell you, when you talk to this Court you will talk with decorum or you will be adjudicated in contempt.

"DET. FORBES: I will talk with decorum, Judge—

"THE COURT: Or you will be adjudicated in contempt.

"DET. FORBES: Then you are going to have to find me in contempt, Judge.

"THE COURT: On that policy you will stand and apologize to the Court or you will be found in contempt on that statement.

"DET. FORBES: I will stand Judge, I won't apologize to the Court.

"THE COURT: You will stand and you will apologize to the Court for your contempt.

"DET. FORBES: I will stand and I will tell you I am not apologizing to this Court.

"THE COURT: Take him and put him in lock-up. Take him and put him in lock-up. And when he is

ready to apologize, bring him back here for the apology." Printed Record at 17a–19a.

The subsequently issued written contempt order states as follows:

"AND NOW, to wit, June 7, 1976, it is ordered that William Forbes be placed in custody for direct criminal contempt of Court, and transported to Allegheny County Jail upon his refusal to apologize to this Court and thereby purge himself of his contempt. Upon his willingness to come before the Court and apologize for his contemptuous conduct, he will be afforded a hearing for the purpose of purging himself of his contempt. Upon purging himself of contempt, he will be released from custody."

We granted supersedeas. In his appeal, appellant argues that his behavior was not contemptuous, and that Judge Johnson committed an abuse of discretion in holding that it was. Before we reach the merits of this question, however, we must determine whether or not we have jurisdiction to hear the matter.

The Supreme Court has exclusive jurisdiction over appeals from final orders of the courts of common pleas in matters of direct criminal contempt.[2] If the finding is one of civil contempt however, this court has jurisdiction provided appeals of other matters involved in the case would properly lie with us. *Woods v. Dunlop*, 461 Pa. 35, 334 A.2d 619 (1975). Since we normally hear appeals from juvenile proceedings, an adjudication of civil contempt arising out of a juvenile proceeding would be properly appealed to this Court. Thus, this appeal is properly before us only if it involves a matter of civil contempt.

While Judge Johnson's order labels this a matter of direct criminal contempt, it is the purpose and charac-

2. Act of July 31, 1970, P.L. 673, No. 223, Art. II, § 202(5), 17 P.S. 211.202(5) (1976–77).

ter of the adjudication which determine whether the matter is one of civil or criminal contempt, not the label which the trial court uses. *Woods v. Dunlop,* supra. Our Supreme Court has recently elaborated on the distinction between civil and criminal contempt as follows:

"There is nothing inherent in a contemptuous act or refusal to act which classifies that act as 'criminal' or 'civil.' The distinction between criminal and civil contempt is rather a distinction between two permissible judicial responses to contumacious behavior. For example, it is clear that a contemptuous refusal to testify before a grand jury may be dealt with either a criminal contempt, civil contempt, or both.

"These judicial responses are classified according to the dominant purpose of the court. If the dominant purpose is to prospectively coerce the contemnor to comply with an order of the court, the adjudication of contempt is civil. If, however, the dominant purpose is to punish the contemnor for disobedience of the court's order or some other contemptuous act, the adjudication of contempt is criminal.

"Dominant purpose of coercion or punishment is expressed in the sanction imposed. A civil adjudication of contempt coerces with a conditional or indeterminate sentence of which the contemnor may relieve himself by obeying the court's order, while a criminal adjudication of contempt punishes with a certain term of imprisonment or a fine which the contemnor is powerless to escape by compliance." *In re Martorano,* 464 Pa. 66, 77, 346 A.2d 22, 27–28 (1975) (footnotes omitted) (citations omitted).

It becomes clear that, if appellant's behavior was in fact contumacious, Judge Johnson had the option of adjudicating criminal contempt or civil contempt. Despite the label of criminal contempt contained in Judge

Johnson's order, the sanctions imposed by that order clearly render the adjudication one of civil contempt under the reasoning of *In re Martorano,* supra. The purpose of the order providing for an indeterminate sentence is to coerce appellant to apologize to the court. In doing so he would thus purge himself of his alleged contempt. These characteristics are those of a civil contempt order.

Since we have before us a matter of civil contempt, we have jurisdiction to hear the merits of the appeal, to which we now address ourselves.

Appellant argues that his behavior was not contemptuous and that Judge Johnson's adjudication of contempt was unwarranted. In order to justify an adjudication of contempt under the statute [3] relied upon by Judge Johnson in his opinion, there must be a finding that there was misbehavior in the presence of the court *and* that the misbehavior obstructed the administration of justice. In light of the unusual circumstances out of which the heretofore quoted colloquy arose, we conclude that William Forbes did not engage in misbehavior which obstructed the administration of justice. Indeed Judge Johnson himself must be charged with any delay in the proceedings which were *properly* before the court. The purpose of the hearing, as stated earlier, was to dispose of the remaining charges against the three juveniles. However, the first eighteen pages of the printed record of that hearing are taken up by Judge Johnson's "investigation" into the possible sources of the *Press* article, complete with warnings to the prosecuting officers that they would be held in contempt if they were involved in future publication of similar articles. Furthermore the statute relied upon by Judge Johnson describes a species of criminal contempt.

Since the order held appellant in civil contempt, the validity of the order must be determined by consider-

3. Act of June 16, 1836, P.L. 784, § 23, 17 P.S. 2041 (III) (1962).

ing when it is proper to hold someone in civil contempt. This consideration will no doubt vary from case to case, according to the particular circumstances. *See United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1946); *Brocker v. Brocker,* 429 Pa. 513, 241 A.2d 336 (1968). Here the circumstances were that the judge conceived that his action was necessary to maintain decorum in his courtroom.

There can be no doubt of the judge's power to maintain decorum in his courtroom. Thus in *Commonwealth v. Patterson,* 452 Pa. 457, 464, 308 A.2d 90, 94 (1973), our Supreme Court said:

"It is universally accepted that the trial judge has the responsibility and authority to maintain in the courtroom the appropriate atmosphere for the fair and orderly disposition of the issues presented. In the judge is vested the power and authority to maintain the order and integrity of the judicial process."

This statement, however, does not imply that the judge may exercise his power and authority in an arbitrary manner. To the contrary:

"The trial judge should be the exemplar of dignity and impartiality. He should exercise restraint over his conduct and utterances. He should suppress his personal predilections, and control his temper and emotions. He should not permit any person in the courtroom to embroil him in conflict, and he should otherwise avoid conduct on his part which tends to demean the proceedings . . . ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 6.4 (Approved Draft 1972)."

*And see Commonwealth v. Patterson, supra,* which cites with approval other sections of the Standards Relating to the Function of the Trial Judge.

Here, the judge below did not comply with these Standards. After insinuating that appellant had done

something wrong, the judge first denied appellant the opportunity to defend himself, and then demanded that he apologize. Appellant's response, "I won't apologize," was perfectly proper; he had nothing to apologize for.

Judgment reversed.

HOFFMAN and CERCONE, JJ., took no part in the consideration or decision of this case.