378 A.2d 440

COMMONWEALTH of Pennsylvania

v.

John FLADGER.

**Appeal of Phyllis B. SERGAY.**

Superior Court of Pennsylvania.

Argued Sept. 14, 1976.
Decided Oct. 6, 1977.

Charles B. Burr, II, Philadelphia, for appellant.

No appearance entered nor brief submitted for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This is an appeal from an order of the Court of Common Pleas, Criminal Trial Division, of Philadelphia County, holding Phyllis B. Sergay in contempt of court and imposing a $500.00 fine plus costs.

The matter arose out of a case wherein John Fladger was charged with rape, involuntary deviate sexual intercourse, and criminal conspiracy.

Prior to trial defense counsel advised the court that he was unable to reach the defendant, that he had received unconfirmed information that he was a patient in the Drug Treatment Center at Saint Luke's Hospital, and that the hospital refused to confirm or deny the information.

At the court's request, the assistant district attorney obtained a subpoena *duces tecum*, directed to the custodian of records of the drug intake unit of St. Luke's, and ordering the production of "All Records of John Fladger who was admitted to your Hosp. on 3/9/76." The court was primarily concerned with learning Fladger's expected release date in order to set a trial date.

The subpoena was served on Robert Teti, a supervisor of the Center. Appellant, the Center's director, arrived at

work the same morning the subpoena was served, and was informed of the subpoena by Mr. Teti. She was also advised by Teti that he had called the clerk whose name was listed on the subpoena and told him that even if a record on Fladger could be located it would not be possible for a representative of the Center to be there within fifteen minutes as required by the subpoena. The clerk's response, Mr. Teti told Mrs. Sergay, was that he would check into it and call back later. No return call was received.

Mrs. Sergay left the next day for a Chicago meeting. Upon her return several days later, she was advised that a bench warrant had been issued for the Center's director when no one appeared in response to the subpoena. In response to the bench warrant, Mrs. Sergay appeared before the court and advised the court that Federal and state laws pertaining to drug abuse treatment programs prohibited the disclosure of the requested information absent a court order issued after full consideration of the rights of all persons affected.[1] The prohibition, appellant contended, extended even to revealing whether or not a particular person was in the program. The court vociferously disagreed with the latter contention and told appellant that the proper way to challenge a subpoena *duces tecum* was not to ignore it but to appear at the appointed time and inform the court of the reason for non-production of the records sought. The hearing concluded with the following colloquy:

"The Court: The point is, nobody came in and answered to that subpoena. If they had appeared here on Monday [March 15] at 3:00 or 4:00 and said, 'We are under the impression that these records are confidential and that there is confidentiality involved here, we do not feel that we can disclose this information,' we could have walled that question in that box.

[A]ppellant's counsel]: Well—

The Court: Wait a minute, wait a minute. Just one minute.

1. Act of March 21, 1972, Pub.L. No. 92–255, Title IV, § 408, 86 Stat. 79, 21 U.S.C. § 1175; Act of April 14, 1972, P.L. 221, No. 63, § 8, 71 P.S. § 1690.108 (Supp.1976).

St. Luke's Hospital doesn't make that determination in and of itself. They do just what you are doing now. And because they did not, they are in contempt of court and I am going to impose a fine of $500.00 and costs. And I am going to tell you one other thing, to be sure that you appeal this. If those records are not, or at least some confirmation that John Fladger is in the physical building, if that is not produced by Monday, I am going to jail your administrator for contempt. Do you understand that?

Mrs. Sergay: I can't answer that.

The Court: Okay, that's it.

[Appellant's counsel]: $500.00 and costs?

The Court: $500.00 and costs?

[Appellant's counsel]: Could we have a stay of that appeal?

The Court: No, you get it from upstairs."

Later the same day, an appeal was taken and this court granted a Petition for Supersedeas, staying the execution of the fine and costs.

█ It is clear from the excerpt *supra* that the court based its contempt finding solely upon Mrs. Sergay's failure to respond to the subpoena. The lower court's assertion in its opinion that her refusal to disclose the information at the hearing constituted a direct criminal contempt need not, therefore, be considered; the court's conclusion that this conduct was contumacious came too late to support the contempt adjudication.[2]

█ As to the threat of imprisonment of the Center's administrator if the information was not forthcoming, we

2. A direct contempt is one that occurs in the actual or constructive presence of the court; an indirect contempt is one that occurs beyond that presence, and consists of the violation of an order or decree of court. *Simmons v. Simmons*, 232 Pa.Super. 365, 335 A.2d 764 (1975). As no direct contempt issue is presented, the appeal was properly taken to this court. The Supreme Court has jurisdiction of appeals from adjudications of direct criminal contempt and other contempt proceedings relating to orders appealable directly to the Supreme Court. Act of July 31, 1970, P.L. 673, art. II, § 202(5), 17

need not decide whether an adjudication of civil contempt [3] was justified by Mrs. Sergay's silence as no such adjudication was ever made. (The defendant appeared for trial about a month after the hearing; a verdict of acquittal was directed upon the failure of the Commonwealth to produce any evidence.)

This leaves a single issue for our determination: was appellant's failure to appear in court in response to the subpoena contumacious?

We agree with appellant that there was neither personal service nor personal knowledge sufficient to place her on notice of personal responsibility to comply.

■ As the lower court notes in its opinion, personal service of a court order is ordinarily a prerequisite to an adjudication of contempt of court for disobedience to the order. An exception to this rule exists where the person in question has actual knowledge of the order despite lack of personal service. *Messmore's Estate*, 293 Pa. 63, 141 A. 724 (1928).

■ This does not mean, however, that any action which gives the alleged contemnor an inkling of the existence or requirements of the order is sufficient to fulfill the service— or—knowledge requirement. The inquiry must be whether the person's knowledge was such that a contempt citation for disobedience to the order could not be said to constitute unfair surprise. The Commonwealth Court said, in a case involving an order staying the proceedings of a zoning hearing board, *Neshaminy Plaza II v. Kelly*, 21 Pa.Cmwlth. 469, 473, 346 A.2d 884, 887 (1975):

P.S. § 211.202(5) (Supp.1976). Since the subject matter of the original proceeding—a criminal prosecution for an offense other than felonious homicide—is within our jurisdiction, this case is properly before us. The label that the trial court places on the contempt is not dispositive. *In re Ebo*, 244 Pa.Super. 163, 171, 366 A.2d 1243, 1246 (1976).

3. A civil contempt adjudication differs from a criminal contempt adjudication in that its purpose is coercive rather than punitive; the contemnor's sentence terminates when he complies with the court order. *In re Ebo*, supra.

42

"The Board proceeded with the hearing and Neshaminy says this was in contempt of the stay order. The hearing judge dismissed the citation on the ground that the alleged contemnors, in view of the informality of the document served and the partisan capacity of the server, had no reliably authoritative basis for believing that they were under an interdiction against holding a zoning hearing. We agree."

■ We do not think the service in the instant case provided Mrs. Sergay with a "reliably authoritative basis" for believing that she could be held responsible for a failure to comply. The subpoena named no person; it was captioned "Custodian of Records." Mrs. Sergay's title was Director of Drug Abuse Program, Mr. Teti's was Unit Supervisor, and it appears that the records were physically accessible to both of them. Under these circumstances, we find it impossible to conclude that Mrs. Sergay was properly held responsible for responding to the subpoena. Mrs. Sergay's appearance in court whereby she undertook the task of explaining the Center's position to the court hardly justified retroactive imposition of responsibility on her for Mr. Teti's apparent inaction.

For the foregoing reasons, the order of the court below is reversed and appellant is discharged.