451 A.2d 1384

**Penny Jo NEMETH**

v.

**Douglas NEMETH, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 12, 1982.

Filed Oct. 22, 1982.

48

Claude V. Falkenhan, Zelienople, for appellant.

Lester Scott Becker, Butler, for appellee.

Before HESTER, BECK and VAN der VOORT, JJ.

VAN der VOORT, Judge:

This case has had a long, and to some extent, confusing passage through the Butler County Court of Common Pleas. The controversy arose from conflicting claims, by now di-

vorced parents, over the custody of their two children, now aged 4 and 6, (ages 3 and 5 at the time of the order here appealed from).

On November 5, 1979, the parties executed a "Property Settlement, Support and Custody Agreement" in which they agreed to live, separate and apart, to divide their household effects and real property. Custody of the children was placed by implication in the mother, with partial custody in the father. The father was to pay support to the mother for the benefit of the children. On February 24, 1980, the father phoned the mother and advised her he was retaining custody of the two children. On February 25, 1980, the mother filed a petition for habeas corpus,[1] and on February 26, 1980, the father filed a "Petition to Confirm Custody." Both petitions were presented to President Judge Kiester for disposition at the same time.

Judge Kiester entered, without a hearing, an order dated February 26, 1980, denying the "Petition to Confirm Custody", finding that "this is not proper procedure to determine custody or to protect the rights of children." The court granted the petition for habeas corpus; and ordered the father imprisoned in Butler County Prison until custody of the children was returned to the mother. On the same day, the father filed an appeal to this court at No. 157 Pittsburgh, 1980. On February 27, 1980, Judge Kiester refused an application for a stay, pending appeal. On February 29, 1980, Judge Montgomery of the Superior Court, upon Petition and Answer of Counsel, and after a hearing, remanded the case to the Butler County Court for a hearing within five days on the Petition to Confirm Custody, which was to be treated as a "petition to change custody due to a change in circumstances . . . ." The father was ordered released upon posting of bond in the sum of $2,000, conditioned upon his production of the children at the hearing.

On March 4th and 5th, 1980, Judge Kiester conducted a hearing, after which he entered an order dated March 5,

---

1. The court treated the petition as one for contempt.

1980 continuing principal custody of the children in the mother, with visitation rights in the father. On March 6th, 1980, the father filed a second appeal to the Superior Court at No. 195 Pittsburgh 1980.[2]

On December 4, 1980, the father again refused to return the children to their mother. Appellant further claims he acted so "believing the welfare of his children was threatened". Appellee-mother filed a second petition for contempt on December 5, 1980. A hearing was held that day before Judge Kiester. After argument by counsel, a rule to show cause was issued upon the father. A hearing was held on December 8, 1980, before Judge Kiester, following which he entered the order presently appealed from. Appellant was found to be in violation of the order of March 5, 1980 and held in contempt of the court. He was directed to return the children to the mother's custody; and required to post bond in the sum of $1,000 to insure his compliance with the order of March 5, 1980. The father was committed to the Butler County Prison pending compliance with the bond requirement.

Appellant's brief, submitted to this court raises five issues.[3] A number of the issues may be resolved with a cursory discussion. We will address the issues seriatim.

1. Was the prosecution for civil or criminal contempt?

█ The contempt citation here in question sought compliance with the previously entered custody order. The lower court's actions were an attempt to coerce the father to abide by the custody order. Violation of such an order has been held to be civil contempt. *Brocker v. Brocker,* 429 Pa. 513,

2. This appeal was argued before another panel of this court. By Per Curiam Opinion and Order, the question of custody was remanded, with directives, to the lower court. *Nemeth v. Nemeth,* 289 Pa.Superior Ct. 334, 433 A.2d 94 (1981).

3. Appellee-mother has advised the court that she would not file a brief in this appeal.

241 A.2d 336 (1968). See also *Commonwealth v. Marcone,* 487 Pa. 572, 410 A.2d 759 (1980); *Commonwealth v. Feick,* 294 Pa. Superior Ct. 110, 439 A.2d 774 (1982).

2. Was appellant entitled, at the contempt proceedings to present evidence excusing his noncompliance?

■ An alleged contemner must be allowed an opportunity to explain or excuse his non-compliance of the order of court as intent is an essential element of contempt. *Commonwealth v. Reid,* 494 Pa. 201, 431 A.2d 218 (1981); *Matter of Mandell,* 489 Pa. 522, 414 A.2d 1013 (1980); *In Re Ebo,* 244 Pa. Superior Ct. 163, 366 A.2d 1243 (1976). However, a contempt defendant may not testify without limitation. At issue is his failure to comply with the court's order.

■ Our review of the proceedings clearly indicates that appellant attempted, in the contempt proceedings, to litigate the issue of custody. As this court indicated in its opinion in this case at 289 Pa. Superior Ct. 334, 433 A.2d 94, contempt proceedings for failure to return the children should be held separately from proceedings in which custody is to be determined. Therefore, we find the lower court properly limited appellant's testimony.

3. If the proceedings were for civil contempt, should not the lower court have at the December 8, hearing only made the rule absolute?

■ Five elements are essential to an adjudication for civil contempt:

1) rule to show cause why attachment should not issue;

2) answer and hearing;

3) rule absolute;

4) hearing on contempt citation; and

5) adjudication of contempt.

*Crislip v. Harshman,* 243 Pa. Superior Ct. 349, 365 A.2d 1260 (1976).

In this current case appellee filed a petition for contempt on December 5, 1980. That afternoon a hearing was held and after argument of counsel a rule was issued to appellant.[4] On December 8, 1980, at the designated returnable time the parties appeared in court, testimony was taken and appellant was found in contempt. As in *Crislip,* "the nomenclature ascribed to the various hearings [and documents] by the lower court conveys, on the surface, a message inconsistent with the rules . . . ." 243 Pa. Superior Ct. at 353, 365 A.2d 1260.

■ However, in *Crislip,* this court found "when we bore through the terminology and extract the core of the hearings, we find that, in substance, the procedures employed comply with the requirements." "Appellant suffered no punishment until after the determination of contempt in the second hearing. He was informed of the charge against him and apprised of the means of purging himself of contempt and of avoiding punishment. That is all that is required by the rules." Id., 243 Pa.Superior Ct. at 353–354, 365 A.2d 1260.[5] We view appellee's petition for contempt as the initial rule to show cause. The hearing on December 5, 1980, at which counsel argued appellant's position satisfies the requirement of answer and hearing.[6] The rule to show

4. The order of December 5, 1980 is dated December 8, 1980, though filed December 5, 1980 at 5:21 P.M. The rule was returnable on December 8, 1980 at 9:00 A.M. We find that the date of the order "December 8" was apparently an oversight as the order was clearly entered December 5.

5. While the time intervals were extremely brief, we find that appellant was not prejudiced by such. We must make one last comment in this regard, a stricter adherence to the required procedure, and terminology would alleviate much of the confusion in such situations.

6. A transcribed recording of this proceeding has not been made available (See issue number 5, supra). However, reviewing the transcript of December 8, it is clear that counsel responded to appellee's petition.

cause, returnable on December 8, was in fact more in the nature of a rule made absolute. Appellant was thereafter adjudicated in contempt. Such procedure while not worthy of emulation meets the requirement of the rules.

4. Should Judge Kiester have recused himself?

■ Appellant contends that Judge Kiester was partial, biased, and prejudiced against his case. Such a claim is one of the most serious charges that can be leveled at a judge. The record must clearly show prejudice, bias, capricious disbelief or prejudgment, *In re J.F.,* 487 Pa. 115, 408 A.2d 1382 (1979). Appellant alleges various specific indications of the judge's partiality.

■ We find nothing in the record to demonstrate that Judge Kiester abused his legal discretion in the matter by refusing to recuse himself. Two written motions for recusal were filed by appellant, the first on March 5, 1980, and the second on December 8, 1980. Essentially the motions argue that the judge was biased against appellant because:

1) he had previously ordered appellant imprisoned for contempt on February 20, 1980 without a hearing;

2) he denied appellant an open and public trial in the contempt charges, and denied appellant's children an open and public trial "on their custody" (R.4);

3) The Butler County Court has by order of court improperly delegated to non-judges the court's duty to make decisions as to custody.

In *Commonwealth v. Snyder,* 443 Pa. 433, 275 A.2d 312 (1971), the Supreme Court held that the presiding judge, during a proceeding where a party's behavior amounts to direct criminal contempt may sit as fact finder at the contempt hearing. Similarly, in civil contempt proceedings, where the judge has not witnessed any contumacious conduct, the judge may sit as fact finder, even though the court

previously found the party in contempt for failure to abide by its order.

Appellant's second complaint in this regard appears to address the court's refusal to allow him to raise the issue of custody in contempt proceedings. As we previously held, the court acted properly in this regard.

We find no reason to address the third argument, as local custody rules are irrelevant in appellant's contempt proceedings; we fail to see how such general rules can reflect the court's biasness directed towards an individual. Appellant-father specifically calls our attention to the hearing on the rule to show cause where the court directed the sheriff to take custody of the children. The court supposedly allowed the sheriff to determine where the children should remain for the weekend. While such may have been imprudent, it does not arise to a level where recusal is necessitated.

Reviewing the record, we find that faced with overly persistent and zealous advocacy, the court dealt firmly; there was no intemperate wrangling, or manifestation of bias. See *Snyder,* supra.

5. Did the lower court improperly prohibit court reporters from transcribing notes of judicial proceedings without first securing the affirmative permission of said court?

It is axiomatic that a stenographic recording of civil proceedings must be taken. *Mansfield v. Lopez,* 288 Pa. Superior Ct. 567, 432 A.2d 1016 (1982).

At the hearing below appellant complained of the court's practice which had denied appellant access to a record of testimony. This, apparently on-going, battle had previously culminated in appellant's suit against a court reporter who refused to transcribe such notes without first receiving the court's approval. The court clarified and justified its policy as a means to insure that records in cases on appeal be given priority. (N.T. 14–16).

The notes of testimony of the December 8, 1980, hearing were transcribed and filed on December 22, 1980. However, the notes of the December 5, 1980 argument have not been transcribed, even though appellant apparently requested such at that time and has filed a written request for such for the sake of this appeal. While we abhor the apparent deliberate failure to transcribe such argument, we believe that we may nonetheless determine this appeal.

The actual word for word transcript of a proceeding is not an absolute necessity for an appeal, *if* an "equivalent picture" is available. *Commonwealth v. Anderson,* 441 Pa. 483, 272 A.2d 877 (1971); *Commonwealth v. Homsher,* 264 Pa.Superior Ct. 271, 399 A.2d 772 (1979). Here appellant's counsel, was also counsel in the proceedings below and we will assume his account of the December 5 hearing is accurate. Appellant's account of such hearing demonstrates that such hearing was for the most part similar to the December 8 account. He questions the court's recording policy, sought the disqualification of any reporter willing to abide by the court's policy; sought the recusal of the trial judge. In addition counsel demanded that the petition only be heard upon adequate notice and questioned the court's decision to allow the sheriff to determine custody for the weekend. (Appellant's brief, pp. 9–10). In this context, we find no need to remand for completion of the record or for additional proceedings as no prejudice appears from the failure to transcribe the December 5 hearing.

Order affirmed.[7]

7. We wish to emphasize two points;
    1) courts should in civil contempt cases strictly adhere to procedure outlined in *Crislip v. Harshman,* supra; and
    2) upon request all proceedings should be recorded and transcribed.