J-A27028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CUMBERLAND COUNTY CHILDREN AND YOUTH | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| JOSEPH M. SMITH | : : | |
| Appellant | : : | No. 531 MDA 2022 |

Appeal from the Judgment of Sentence Entered March 3, 2022
In the Court of Common Pleas of Cumberland County Domestic Relations
at No(s):  00064 S 2020

BEFORE:   DUBOW, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:      **FILED: MARCH 16, 2023**

Joseph A. Smith appeals from the judgment of sentence imposed after the court found him to be guilty of indirect criminal contempt for failing to appear at a child support hearing. Smith argues the evidence was insufficient to prove that he had notice of the order to appear or that he willfully failed to comply, and that the court abused its discretion in sentencing him to a period of incarceration. We affirm.

In April 2021, the Cumberland County Children and Youth Services ("CYS") filed a complaint for child support against Smith.[1] The court ordered Smith to appear, via Zoom, for a support conference on July 8, 2021, at the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] CYS had previously filed a complaint in January 2020, which was dismissed in April 2020. Both complaints stated Smith resided on High Mountain Road in Shippensburg.

court's Domestic Relations Section ("DRS"). The court sent the order to Smith at an address on Koser Road in Shippensburg, via certified mail. *See* Order of Court, 5/27/21. An officer filed an affidavit of personal service stating he handed a copy of the order to Smith at that address. *See* Affidavit of Personal Service, 6/3/21, at 1.  It showed Smith's signature under the Acceptance of Service. *Id.* at 2.

The record is silent as to whether Smith attended the support conference.[2] On July 8, 2021, the court ordered him to pay $1,152 per month in child support, including arrears. *See* Trial Court Opinion, 5/31/22, at 1.[3] The order stated, "Parties must within seven days inform the Domestic Relations Section . . . in writing, of any material change in circumstances relevant to . . . the administration of the support order, including, but not limited to . . . change of personal address[.]" Order of Court – Allocated, 7/8/21, at 4. It also stated, "A party who willfully fails to report a material change in circumstances may be adjudged in contempt of court, and may be fined or imprisoned." *Id.* The order stated copies were delivered to the parties that same day, July 8, 2021. *Id.*

---

[2] The Rules of Civil Procedure provide that the court may enter a support order if a notified party fails to attend the conference. *See* Pa.R.C.P. 1210.11(b), 1910.12(b)(2).

[3] The support order in the record, dated the same day of the hearing, requires Smith to pay $1,268 per month in support, with arrears of $4,137 to be due immediately. The discrepancy between the figures does not affect our analysis.

CYS filed a petition for contempt in September 2021 ("the civil contempt petition"), alleging Smith had failed to make any child support payments. The court scheduled a hearing for September 27, 2021. It issued an order requiring Smith to appear at the hearing, stating, "If you do not appear in person, the court may issue a warrant for your arrest and you may be committed to jail." Order of Court, 9/13/21, at 1.

Smith failed to appear for the hearing. The court rescheduled it for October 27, 2021. The court issued another order requiring Smith to attend the hearing. **See** Order of Court, 9/29/21, at 1. In included the same language as the previous order regarding the potential for jail time. **See id.**

Smith again failed to appear. The court issued a bench warrant for his arrest. The bench warrant was executed, and Smith was arrested. The court rescheduled the hearing for 1:30 p.m. on March 3, 2022.[4]

At 11:12 a.m. that morning, CYS filed a petition for indirect criminal contempt ("the criminal contempt petition") under 23 Pa.C.S.A. § 4344 based on Smith's failure to appear at the October 27 hearing. The court issued an order requiring Smith to appear for a hearing on the criminal contempt petition that afternoon, in conjunction with the previously scheduled hearing on the civil contempt petition.

---

[4] In the interim, due to the release of the children from CYS custody, Smith's support order was modified such that no new support was due, and arrears in the amount of $11,201.24 became due at a rate of $1,000 per month. **See** Order, 2/9/22, at 1.

At the hearing on the two petitions, CYS presented the testimony of Scott Houser, a conference officer for the DRS. Regarding the failure to pay support, Houser presented a print-out from the computer system used to track the payments made in Smith's case and testified that Smith had never made any payments toward his support obligation. N.T., 3/3/22, at 8.

Regarding the failure to attend the civil contempt hearings, Houser testified that at the time the petition was filed, Smith's address of record with the DRS was a P.O. box in Walnut Bottom. *Id.* at 9. He stated the DRS mailed the order requiring Smith to attend the October 27 hearing to the Walnut Bottom address. *Id.* at 10. He also testified that the DRS submitted a postal verification to the postmaster of Walnut Bottom, which was returned by the postmaster with the response, "Mail is delivered at address given." *Id.* at 10, 11; Plaintiff's Ex. 2 at 4. Houser stated that Smith never contacted the DRS to provide a change of address. N.T. at 17.

Houser testified that he was unaware of whether Smith has ever physically been to the DRS. *Id.* at 14. However, Houser said that another conference officer's summary stated that Smith had called the DRS on one occasion to ask for a continuance of an earlier enforcement conference. *Id.* Houser testified that despite having a P.O. box as Smith's address of record, officers of the court had arrested Smith at a residence when they executed the bench warrant. *Id.* at 12. Houser did not know the address of the residence. *Id.*

Smith countered that CYS had failed to prove he had received notice of the order to appear on October 27. Smith made other arguments regarding why he did not pay support or receive notice of the October 27 hearing, which the court noted were premised on extra-record facts. *Id.* at 23.

The court found Smith in civil contempt for failing to pay support, and guilty of indirect criminal contempt for willfully failing to appear for the October 27 contempt hearing. Citing ***Godfrey v. Godfrey***, 894 A.2d 776 (Pa.Super. 2006), the court found the uncontested facts were that the order was mailed to Smith at the address he had provided to the DRS. Trial Ct. Op. at 4. The court therefore concluded that Smith had had notice of the hearing and that he willfully and intentionally failed to appear. *Id.* The court sentenced him to three to six months' imprisonment for the finding of indirect criminal contempt and a consecutive 12 months' probation for the finding of civil contempt.

Smith appealed. He states his issues as follows:

I.      Did the court err when it found Mr. Smith in indirect criminal contempt, where the evidence was insufficient to prove beyond a reasonable doubt that Mr. Smith received notice and willfully and intentionally defied the order to appear for court?

II.     Did the court abuse its discretion in sentencing Mr. Smith to a period of incarceration without procedural safeguards in place where Mr. Smith was not given any other opportunity to comply and where incarceration for indirect criminal contempt should be used as a last resort?

Smith's Br. at 6.

## I. Sufficiency of the Evidence

Smith first argues the evidence was insufficient to prove indirect criminal contempt because CYS did not present any evidence that he had received notice of the original support order or knew of the requirement that he update the DRS with his address, let alone notice of the order requiring him to appear for a hearing on October 27. He points out that while Houser testified that his mailing address with the DRS at the time of the order scheduling the hearing was the P.O. box, Houser did not testify as to how the DRS obtained that address or that Smith had ever even been to the DRS. Smith argues that while there was testimony that he had contacted the DRS once to request a continuance, Houser did not explain how the DRS identified Smith as the caller. He points out that Houser testified that officers of the court later located and arrested Smith at a residential address.

Smith therefore argues that the evidence was insufficient to prove he had actual notice of the October 27 hearing and that he voluntarily or with wrongful intent failed to appear. Smith contends that 23 Pa.C.S.A. § 4353, which was at issue in **Godfrey**, only provides that notice regarding the enforcement of a support order may be satisfied when the DRS exercised "due diligence" in locating a party, and when written notice was delivered at the party's last residential address — not P.O. box — filed with the DRS.

"Indirect criminal contempt is a violation of a court order that occurred outside the court's presence." **Commonwealth v. McMullen**, 961 A.2d 842, 849 (Pa. 2008). Its purpose is to vindicate the authority of the court and

punish willful disobedience. ***Commonwealth v. Bowden***, 838 A.2d 740, 760 (Pa. 2003); ***Fatemi v. Fatemi***, 537 A.2d 840, 845 (Pa.Super. 1988). We review a finding of indirect criminal contempt for an abuse of discretion. ***Commonwealth v. Baker***, 766 A.2d 328, 331 (Pa. 2001). "An appellate court cannot find an abuse of discretion merely for an error of judgment unless, in reaching a conclusion, the trial court overrides or misapplies the law, or its judgment is manifestly unreasonable, or the evidence of record shows that the court's judgment exercised is manifestly unreasonable or lacking in reason." ***Id.***

Evidence is sufficient to support a conviction for indirect criminal contempt when, viewed in the light most favorable to the verdict winner, it could allow the fact-finder to find every element of the crime beyond a reasonable doubt. ***Commonwealth v. Brumbaugh***, 932 A.2d 108, 109 (Pa.Super. 2007). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Id.*** at 109-10.

The elements of indirect criminal contempt are: (1) "the court's order was definite, clear, specific, and leaving no doubt in the person to whom it was addressed of the conduct prohibited," (2) "the contemnor had notice of the order," (3) "the act constituting the violation was volitional," and (4) "the contemnor acted with wrongful intent." ***McMullen***, 961 A.2d at 849; ***see also Baker***, 766 A.2d at 331. Formal service is not required, so long as the party

charged with indirect criminal contempt had knowledge of the order. ***See Commonwealth v. Stevenson***, 283 A.3d 196, 205-06 (Pa. 2022).[5] "The inquiry must be whether the person's knowledge was such that a contempt citation for disobedience to the order could not be said to constitute unfair surprise." ***Commonwealth v. Fladger***, 378 A.2d 440, 443 (Pa.Super. 1977).

Section 4344 of the Domestic Relations Code specifically provides for a finding of criminal contempt based on a party's willful failure to comply with "a duly served order":

> **§ 4344. Contempt for failure of obligor to appear**
>
> A person who willfully fails or refuses to appear in response to a duly served order or other process under this chapter may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
>
> (1) Imprisonment for a period not to exceed six months.
>
> (2) A fine not to exceed $500.
>
> (3) Probation for a period not to exceed six months.

23 Pa.C.S.A. § 4344.

In ***Godfrey***, we considered the notice requirement for a finding of indirect criminal contempt under Section 4344. The defendant in ***Godfrey*** argued he had never received notice of the order requiring him to appear for a support hearing. 894 A.2d at 779. The DRS presented evidence that notices of the hearing were sent by regular and certified mail to the defendant's last

---

[5] ***See also In re Messmore's Estate***, 141 A. 724, 726 (Pa. 1928) (explaining liability for contempt arises where a party had actual, personal knowledge of a court order, even where the order has not been served upon them).

known residential address — these went returned and unclaimed — and the defendant testified that he lived at the address "off and on" that season and still had personal effects at that address. *Id.* at 779, 781. The defendant had also been found in civil contempt for failure to pay support three times in the preceding three years. *Id.* at 779, 779 n.2.

The trial court in *Godfrey* found the defendant guilty. It relied on Section 4353(a.1), which provides,

> **(a.1) Delivery.--**In any subsequent child support enforcement action between the parties, upon sufficient showing that due diligence has been made to ascertain the location of a party, the court or the department may deem due process requirements for notice and service of process to be met with respect to the party upon delivery of written notice to the most recent residential address or employer address filed with the domestic relations section or the department pursuant to subsection (a).[6]

23 Pa.C.S.A. § 4353(a.1). We affirmed, concluding DRS had acted with due diligence to locate the defendant and had sent the order to the defendant's last known residential address, satisfying notice pursuant to Section 4353(a.1). *Godfrey*, 894 A.2d at 781. We accordingly affirmed the court's finding that the defendant had willfully failed to appear. *Id.*

We do not find *Godfrey* controlling, as Section 4353(a.1) only applies when notice was sent to a defendant's last known residential address. Evidence of mailing an order to a P.O. box therefore does not invoke the statute's exception to the notice requirement. *See* 23 Pa.C.S.A. § 4353(a.1).

---

[6] Subsection (a) requires a party to update the DRS of any change in "personal" address. 23 Pa.C.S.A. § 4353(a).

- 9 -

Nevertheless, we find **Godfrey** instructive, and the evidence sufficient to prove Smith had knowledge of the order he violated. CYS presented testimony that Smith had contacted the DRS regarding the support action on at least one occasion; he was therefore aware of the action and how to contact the DRS.[7] It also presented evidence that the DRS mailed the order requiring Smith's attendance at the October 27 hearing to the address it had on file for him.[8] **See** Pa.R.C.P. 236, Note (providing prothonotary may send notice of court order by mail); **see also** Pa.R.C.P. 1910.25(d)(1) (providing petition for contempt for failure to pay support may be served by ordinary mail). Finally, CYS presented evidence that the postmaster verified that this mailing address was active. **See** Pa.R.C.P. 1910.13-1(a)(2)(i) (providing court may issue bench warrant for failure to appear at a contempt hearing for failure to pay support, so long as there is evidence that DRS sent scheduling order by mail and verified the address with the postmaster). This evidence was sufficient for the court to conclude that Smith had knowledge of the order requiring him to appear on October 27. **See Stevenson**, 283 A.3d at 206.[9]

---

[7] The record also reflects that Smith was served, in person, with notice of the original support hearing.

[8] We observe this was not the same as the address used to notify Smith of the initial support conference, indicating that he had subsequently updated DRS with a change of address.

[9] **Cf. Commonwealth v. Verga**, No. 1544 MDA 2020, 2021 WL 5297525, at *2 (Pa.Super. Nov. 15, 2021) (unpublished memorandum) (finding evidence insufficient to support indirect criminal contempt conviction for violation of PFA
*(Footnote Continued Next Page)*

## II. Sentencing

Smith argues the court abused its discretion in imposing a sentence of incarceration where less severe sanctions were appropriate. He argues that Section 4344 provides for alternative punishments – fines, probation, or incarceration – because a court must "fashion an appropriate sentence" according to the facts of each case. Smith's Br. at 22. Smith argues that his sentence of incarceration was unwarranted under the facts of his case since it was his first proceeding for failure to pay, and "[n]o previous sanctions were imposed to encourage [him] to comply with the order or to encourage him to participate in the contempt hearing process;" for instance, he had never had the opportunity to purge the finding of civil contempt for failure to pay before being found in criminal contempt for failure to appear. *Id.* at 22. He contends that his periods of failure to pay and failure to appear were much shorter than the four-year period at issue in *Godfrey*. *Id.* at 21-22.

An appellant does not have an absolute right to appeal a discretionary aspect of his sentence. *Commonwealth v. Radecki*, 180 A.3d 441, 467 (Pa.Super. 2018). Rather, we will consider the issue where the appellant (1) filed a timely notice of appeal, (2) properly preserved the issue in the court below, (3) included a Pa.R.A.P. 2119(f) statement in his brief, and (4) raised

_____

order where there was no evidence that anyone had sent a copy of the PFA order to the defendant, personally served the defendant, or otherwise notified the defendant of the existence of the order, and trial court relied only on fact that the record and docket did not indicate an order had ever been returned as undeliverable).

a substantial question that the sentence is "inconsistent with a specific provision of the Sentencing Code" or "contrary to the fundamental norms which underlie the sentencing process." *Id.* at 467, 468 (citation omitted).

Smith preserved his discretionary sentencing claim below, filed a timely notice of appeal, and included a Pa.R.A.P. 2119(f) statement in his brief. Smith's argument that his sentence of three months' incarceration was excessive based on his failure to appear at a support hearing raises a substantial question. *Id.* at 467 (noting an argument that a sentence is excessive only raises a substantial question where there is a plausible argument that the sentence is *prima facie* excessive based on the criminal conduct involved). However, we conclude Smith is not entitled to relief.

A sentencing court has broad discretion in sentencing, and we will disturb the exercise of that discretion only upon a manifest abuse of discretion. ***Commonwealth v. Rosario***, 248 A.3d 599, 613 (Pa.Super. 2021), *appeal denied*, 262 A.3d 1258 (Pa. 2021), *and cert. denied sub nom.* ***Rosario v. Pennsylvania***, 142 S. Ct. 1143 (2022). "We must accord the sentencing court's decision great weight because it was in the best position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime." *Id.* (citation omitted).

> A court may impose a penalty of incarceration for the following reasons:
>
> (1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime;
>
> (2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or

> (3) a lesser sentence will depreciate the seriousness of the crime of the defendant.

42 Pa.C.S.A. § 9725. "Although Pennsylvania's system stands for individualized sentencing, the court is not required to impose the minimum possible confinement." *Radecki*, 180 A.3d at 470 (citation omitted).

The court sentenced Smith to three to six months in jail for his failure to attend the second contempt hearing the court had scheduled following Smith's failure to pay his court-ordered child support. Therefore, Smith's argument that he was sanctioned for his "first" failure to comply with the orders of the court holds no weight, as he not only failed to comply with the order scheduling the October 27 hearing, but with the original support order and the order requiring him to appear at the first contempt hearing. Furthermore, while a finding of civil contempt for failure to pay must afford a contemnor further opportunity to purge the contempt, a court does not need to offer any such opportunity to purge upon a finding of criminal contempt, as the goal of the sanction is not to obtain compliance, but to punish non-compliance. If the court had merely found Smith in civil contempt for failure to pay his child support, his two failures to appear would have had zero repercussions. The court did not abuse its discretion in sentencing Smith to three months to vindicate its authority and avoid depreciating the seriousness of Smith's actions.

In conjunction with his discretionary sentencing claim, Smith also argues he was deprived of procedural due process. Smith's Br. at 20. He

asserts that the last-minute notice of the criminal contempt petition gave him inadequate time to prepare a defense, particularly where he was not transported to the courthouse, but was participating from the prison by Zoom. *Id.* at 23.

Smith failed to preserve his due process argument in the trial court. Smith did not ask for a continuance or object to the criminal contempt hearing on the basis that he had not had sufficient time to prepare a defense or that he was not physically present for the hearing, or otherwise present the issue below. He therefore waived it. Pa.R.A.P. 302(a); *see Commonwealth v. Stultz*, 114 A.3d 865, 885 (Pa.Super. 2015) ("due process sentencing claims are waivable").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/16/2023