**Vicki E. GODFREY, Appellee,**

v.

**Stephen M. GODFREY, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 12, 2005.
Filed Feb. 28, 2006.

Craig P. Miller, Lock Haven, for appellant.

Michael D. Angelelli, Lock Haven, for appellee.

BEFORE: BENDER, BOWES, and PANELLA, JJ.

OPINION BY PANELLA, J:

¶ 1 Appellant, Stephen M. Godfrey, appeals from the order entered on April 7, 2005, by the Honorable J. Michael Williamson, Court of Common Pleas of Clinton County, finding him in civil contempt for failure to appear at a contempt hearing and failure to pay child support and imposing a bond requirement. After careful review, we affirm that portion of the contempt finding and resultant sentence pursuant to 23 PA.CONS.STAT.ANN. § 4344 with reference to Godfrey's failure to attend a properly scheduled and noticed contempt hearing. Although we find Godfrey's refusal to support his family to be reprehensible conduct, which justified the finding of civil contempt under 23 PA.CONS.STAT.ANN. § 4345, in accordance with current Pennsylvania law we must vacate in part and remand for further proceedings the sentencing portion of the contempt order as it imposes purge conditions that Godfrey does not have the present ability to meet. Additionally, we vacate the portion of the order imposing a bond requirement pursuant to 23 PA.CONS.STAT.ANN. § 4347.

¶ 2 The record in the case *sub judice* reveals that on September 16, 1999, the trial court entered an order directing Godfrey to pay $511.14 per month in child support and arrearages for his daughters, Taylor Godfrey, born on August 30, 1990,

and Shanna Godfrey, born on October 21, 1993.[1] Due to Godfrey's failure to furnish payments in accordance with the support order, the Clinton County Domestic Relations Section filed three petitions for contempt within the last few years. Upon the filing of each petition for contempt, the trial court adjudicated Godfrey in civil contempt of the support order and sentenced Godfrey, each time, to six months imprisonment.[2]

¶ 3 The latest petition for contempt was filed by the Clinton County Domestic Relations Section on August 17, 2004, and again alleged that Godfrey had failed to pay his monthly support obligation. *See* Petition for Contempt, 8/17/04. The trial court scheduled a contempt hearing for September 30, 2004, and notices were sent by regular and certified mail to Godfrey's last known address. Godfrey failed to appear for the contempt hearing and a bench warrant was issued for his arrest.[3] Godfrey was subsequently taken into custody and the trial court conducted a hearing on the contempt petition on April 6, 2005, at which time Godfrey was represented by court-appointed counsel.

¶ 4 At the hearing, it was noted that Godfrey owed $34,795.90 in arrears. It was established that notices of the September 30, 2004 contempt hearing were sent by regular and certified mail to Godfrey's last known address, 2500 Federal Avenue in Williamsport. Godfrey, however, maintained that he had not received notice of the September 30th hearing, but that he did live at the 2500 Federal Avenue address—the address on file with the Clinton County Domestic Relations Sec-

tion—"off and on through the fall" of 2004. N.T., 4/6/05, at 7. Godfrey testified that he has no property, no job, and no bank account. Godfrey conceded that he did work for four months in 2004 and made $7.50 per hour "under the table" at his job. *Id.*, at 6. When asked if he had a source of income, Godfrey responded by stating, "[i]t's getting to the point I'm down to my last, you know. I've got to get a job." *Id.*

¶ 5 On April 7, 2005, the trial court entered an order finding Godfrey in contempt, pursuant to 23 PA.CONS.STAT.ANN. § 4344, for his failure to appear at the September 30, 2004 hearing. The trial court sentenced Godfrey to six months imprisonment on the contempt finding. The trial court further found Godfrey in contempt, pursuant to 23 PA.CONS.STAT.ANN. § 4345, for his "willful noncompliance with his support order, by failing to make payments, and by failing to notify of his employment." Order, 4/7/07, at 3. The trial court sentenced Godfrey to a consecutive term of six months imprisonment on the contempt finding, but noted that Godfrey could purge himself of the contempt by "securing employment and by applying for and paying to the Domestic Relations Section his IRS refund check." *Id.*, at 4. In addition, the trial court ordered that

> [p]ursuant to 23 [PA.CONS.STAT.ANN.] § 4347, the [c]ourt directs that the Defendant not be released from incarceration even at the expiration of the two (2) contempt sentences unless he posts a bond in the amount of Twenty-five Thousand Dollars ($25,000.00) to secure payment of his child support, this [c]ourt

---

1. The children reside with their mother, Vicki Godfrey.

2. Godfrey was held in civil contempt on July 17, 2001, July 2, 2002, and October 13, 2003.

3. This was not the first time that Godfrey had failed to appear for a contempt hearing. Godfrey had failed to appear for the hearings previously scheduled for July 2, 2002, and October 13, 2003; bench warrants were issued for his arrest and, each time, Godfrey was eventually taken into custody.

being convinced that the Defendant has habitually failed to comply with [c]ourt [o]rders and does not intend to pay child support even if employed.

*Id.* Lastly, the trial court made Godfrey eligible for work release. This timely appeal followed.

¶ 6 On appeal, Godfrey presents the following issues for our review:

1. DID THE LOWER COURT ERR IN HOLDING DEFENDANT IN CONTEMPT OF COURT AND SENTENCING HIM TO SIX MONTHS FOR HIS FAILURE TO APPEAR AT A PREVIOUS HEARING WHERE THERE EXISTED NO PROOF OF SERVICE?

. . .

2. DID THE LOWER COURT ERR IN FINDING THE DEFENDANT IN CONTEMPT FOR DEFENDANT'S FAILURE TO PAY SUPPORT AND ORDERING THAT DEFENDANT MAY PURGE HIMSELF FROM CONTEMPT BY SECURING AND BY APPLYING FOR AND PAYING TO DOMESTIC RELATIONS SECTION [SIC] HIS IRS REFUND CHECK AND BY NOT CONSIDERING DEFENDANT'S PRESENT ABILITY TO PAY?

. . .

3. DID THE LOWER COURT ERR IN IMPOSING A BOND REQUIREMENT PRIOR TO THE DEFENDANT EVER BEING RELEASED?

. . .

Appellant's Brief, at 5.[4]

¶ 7 Our standard of review when considering an appeal from an order holding a party in contempt of court is narrow:

We will reverse only upon a showing of an abuse of discretion. *See Rhoades v. Pryce,* 874 A.2d 148, 153 (Pa.Super.2005). The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason. *See Lachat v. Hinchcliffe,* 769 A.2d 481, 487 (Pa.Super.2001). "This court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt." *Rhoades,* 874 A.2d at 153.

¶ 8 Godfrey first argues that the trial court erred in holding him in contempt under 23 Pa.Cons.Stat.Ann. § 4344, for his failure to appear at the contempt hearing conducted on September 30, 2004. Specifically, Godfrey argues that his six month sentence for contempt should be "set aside" as "there [was] no due diligence shown, nor even alleged" and that there was no proof of service that he received notice of the hearing. Appellant's Brief, at 9–10.

¶ 9 As mentioned, the trial court held Godfrey in contempt pursuant to 23 Pa. Cons.Stat.Ann. § 4344. Section 4344 states the following:

A person who willfully fails or refuses to appear in response to a duly served order or other process under this chapter may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

(1) Imprisonment for a period not to exceed six months.

(2) A fine not to exceed $500.

(3) Probation for a period not to exceed six months.

23 Pa.Cons.Stat.Ann. § 4344.

¶ 10 Godfrey's argument essentially centers on his contention that he never

---

**4.** For ease of disposition, we have reordered Godfrey's issues.

received notice of the September 30, 2004 contempt hearing. Section 4353 of the Domestic Relations Code mandates that a party to a support proceeding is required to inform within seven days "the domestic relations section, the department and the other parties" to the support proceeding of any change of personal address. 23 Pa. Cons.Stat.Ann. § 4353(a). With respect to due process requirements for notice, Section 4353 states, in pertinent part, the following:

> In any subsequent child support enforcement action between the parties, upon sufficient showing that due diligence has been made to ascertain the location of a party, the court or the department may deem due process requirements for notice and service of process to be met with respect to the party, upon delivery of written notice to the most recent residential address or employer address filed with the domestic relations section or the department pursuant to subsection (a).

23 Pa.Cons.Stat.Ann. § 4353(a.1).

¶ 11 In the present case, the last address given by Godfrey to the Domestic Relations Section was 2500 Federal Avenue, Williamsport, Pennsylvania. *See* N.T., 4/6/05, at 2. Counsel for Vicki Godfrey informed the trial court that he had sent Godfrey the petition for contempt at the 2500 Federal Avenue address by certified mail in August 2004 and by regular mail on October 1, 2004. *See id.* Counsel noted that the regular mail was returned with the notation "[d]oes not live here; do not send his mail" and that the certified mail went unclaimed. *Id.* A review of the certified record discloses that a copy of the trial court's order scheduling the hearing was also sent to Godfrey.

¶ 12 At the contempt hearing, Godfrey contended that he did not attend the hearing on September 30, 2004, as he had not received notice. *See id.*, at 3. Godfrey testified that the 2500 Federal Avenue address was his sister's house and that he lived there "off and on through the fall" of 2004. *Id.*, at 7. Godfrey also testified that he still had possessions at 2500 Federal Avenue and that he never informed the Clinton County Domestic Relations Section that he would not be receiving mail at that residence. *See id.*, at 3 and 7.

¶ 13 The trial court found that Godfrey's testimony lacked credibility and further found that despite appropriate notices sent to his last known address he willfully failed to appear at the contempt hearing. *See* Trial Court Opinion, 5/12/05, at 1. Accordingly, the trial court held Godfrey in contempt.

¶ 14 We find that Godfrey's argument regarding the lack of due diligence to be without merit. Godfrey's testimony established that he resided at 2500 Federal Avenue "off and on through the fall" of 2004. A review of the record reveals that notices were sent to this address during this relevant time period. Furthermore, Godfrey admits that he never informed the Clinton County Domestic Relations Section of a change in his address from 2500 Federal Avenue to another residence. Interestingly, Godfrey also admitted that he still keeps possessions in that residence. Given these undisputable facts, we find that the domestic relations division and the opposing party acted with due diligence to properly serve Godfrey with notice and, therefore, the trial court's finding of contempt for willful failure to appear pursuant to Section 4344 is amply supported by the record.

¶ 15 We next address Godfrey's argument that the trial court erred in imposing conditions for a purge that requires Godfrey to secure employment and apply for and pay to the Clinton County Domestic Relations Section his IRS refund check.

As mentioned, the trial court imposed the foregoing purge conditions when it found Godfrey in contempt pursuant to 23 Pa. Cons.Stat.Ann. § 4345.

¶ 16 Preliminarily, we note that an appreciation of the difference between civil and criminal contempt is essential to our discussion of Godfrey's argument. We explained the difference between civil and criminal contempt in *Wetzel v. Suchanek,* 373 Pa.Super. 458, 541 A.2d 761 (1988), as follows:

Civil contempt has as its dominant purpose to enforce compliance with an order of court for the benefit of the party in whose favor the order runs, while criminal contempt has as its dominant purpose, the vindication of the dignity and authority of the court and the protection of the interest of the general public. This distinction between civil and criminal contempt is important because the type of contempt being punished will determine the manner in which the contempt is to be adjudicated as well as the punishment which may be imposed. It must be noted that the characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of civil contempt by complying with the court's directive.

*Id.,* at 763 (citations omitted). Our Supreme Court reiterated this distinction most recently in *Commonwealth v. Bowden,* 576 Pa. 151, 184–185, 838 A.2d 740, 760–761 (2003).

¶ 17 We now proceed to address Godfrey's argument that the trial court erred in setting purge conditions pursuant to Section 4345. Section 4345 states the following:

(a) **General rule.**—A person who willfully fails to comply with any order under this chapter, except an order subject to section 4344 (relating to contempt for

failure of obligor to appear), may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

(1) Imprisonment for a period not to exceed six months.

(2) A fine not to exceed $1,000.

(3) Probation for a period not to exceed one year.

(b) **Condition for release.**—An order committing a defendant to jail under this section shall specify the condition the fulfillment of which will result in the release of the obligor.

23 Pa.Cons.Stat.Ann. § 4345.

¶ 18 "To be found in civil contempt, a party must have violated a court order." *Hyle v. Hyle,* 868 A.2d 601, 604 (Pa.Super.2005) (citing *Garr v. Peters,* 773 A.2d 183, 189 (Pa.Super.2001)). Therefore, "the complaining party must show, by a preponderance of the evidence, that a party violated a court order." *Id.* (citing *Sinaiko v. Sinaiko,* 445 Pa.Super. 56, 664 A.2d 1005, 1009 (1995)). "The alleged contemnor may then present evidence that he has the present inability to comply and make up the arrears." *Id.* (citing *Barrett v. Barrett,* 470 Pa. 253, 264, 368 A.2d 616, 621 (1977)).

When the alleged contemnor presents evidence that he is presently unable to comply [with a support order]

the court, in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced **beyond a reasonable doubt**, from the totality of the evidence before it, the contemnor has the present ability to comply.

*Id.*, at 604–605 (quoting *Barrett*, 470 Pa. at 264, 368 A.2d at 621) (emphasis in original).

¶ 19 In the present case, it is evident from our review of the record that the trial court's finding of contempt was warranted. As mentioned, the trial court entered an order on September 16, 1999, which required Godfrey to make monthly payments to support his two children. Godfrey has never complied with the support order in that he has not made a single monthly payment and, as a result, has accumulated substantial arrearages totaling, as of the time of the contempt hearing, $34,795.90. *See* Order, 4/7/05, at 1. Thus, the evidence fully supports the trial court's finding that Godfrey willfully violated the court order at issue.

¶ 20 At this point in our discussion, it is important to note that we sympathize with the predicament facing the trial court in its unenviable position of having to coerce Godfrey to support his own children. There is no question that the trial court conscientiously attempted to utilize different avenues in its collection methods, in order to provide support for these children. Nevertheless, we are constrained, by well established case law, to find that the purge conditions are not permissible under current Pennsylvania law.

¶ 21 Based on the record developed at the contempt hearing, the purge condition requiring Godfrey to apply for and pay to the Clinton County Domestic Relations Section his IRS refund check is impermissible because it is an impossible condition. Godfrey testified that when he worked he was paid "under the table." N.T., 4/6/05, at 6. Thus, unless there is evidence of other wages that Godfrey earned during the relevant time period, Godfrey is not entitled to a refund from the IRS; simply put, he did not pay money in taxes to the government. Accordingly, this purge condition constitutes an abuse of discretion and we vacate that portion of the order.

¶ 22 We must also find that the trial court erred in imposing as a condition for a purge the requirement that Godfrey secure employment as such a condition will only be met sometime in the future. "The law in this Commonwealth is, however, that the trial court must set the conditions for a purge in such a way as the contemnor has the **present ability** to comply with the order." *Hyle*, 868 A.2d at 605 (emphasis in original) (collecting cases).

¶ 23 In *Hyle*, the appellant had accumulated substantial arrearages and had steadfastly refused to pay court-ordered spousal and child support. *See id.*, at 603–604. At a contempt hearing, the trial court sentenced Hyle to six months imprisonment pursuant to Section 4345. *See id.*, at 604. At the contempt hearing, Hyle testified that his only assets were $21.00 and a 1987 Crown Victoria motor vehicle. *See id.* The trial court, however, set a purge of $2,500.00. *See id.* In imposing the purge condition, the trial court noted that "the purge is well within [Hyle's] means to accomplish by working for a short period of time" and ordered Hyle eligible for work release so that he could obtain employment. *Id.*, at 605 (internal quotation marks and citation omitted).

¶ 24 On appeal, we affirmed that portion of the order finding Hyle in contempt, but vacated the purge condition. We noted that a condition for a purge must be set so that the contemnor has the present ability to comply with the order. *See id.* In Hyle's case, we observed that his "ability to comply with the purge set by the trial court will only occur sometime in the future" as we wrote that to comply Hyle "must first secure employment and then earn $2,500.00 to pay the purge amount."

*Id.* Therefore, we vacated that portion of the order that set the purge condition and remanded "for the trial court to determine what conditions will be sufficiently coercive yet enable [Hyle] to comply with the order." *Id.*, at 606.

¶ 25 This Court's decision in *Wetzel v. Suchanek*, 373 Pa.Super. 458, 541 A.2d 761 (1988), offers further support of our finding that the trial court erred in imposing as a condition for a purge the requirement that Godfrey secure employment. In *Wetzel*, the trial court found Suchanek in civil contempt for his willful failure to comply with an order directing that he obtain employment. *See id.*, at 763. In imposing sanctions stemming from the finding of civil contempt, the trial court sentenced Suchanek to sixty days imprisonment. *See id.* The trial court set as a condition for a purge that Suchanek secure full-time employment. *See id.*, at 764. Suchanek appealed, and in reversing the trial court's order, we stated the following:

> While we recognize the frustration the court must have felt after its repeated dealings with this appellant, we cannot ignore the case law of this Commonwealth. The Pennsylvania Supreme Court has held that the use of the court's civil contempt power to enforce compliance with a court order is to be exercised with the objective of compelling performance, and not inflicting punishment; thus, a court may not convert a coercive sentence into a punitive one by imposing conditions that a contemnor cannot perform and thereby purge himself of contempt.
>
> . . .
>
> Instantly, the only way for appellant to purge himself of the incarceration is to find employment. It would appear that, for this appellant, such a task was difficult enough while out of jail. **Requiring him to secure employment while behind bars is tantamount to simply sentencing him to an unconditional 60 days imprisonment which would violate the rules of civil contempt.**

*Id.*, at 763–764 (citations omitted and emphasis added). We noted that "[h]ad it been the sole intent of the trial court to punish appellant for his continued noncompliance with the order of court, appellant could have been charged with indirect criminal contempt," provided "the presence of the essential procedural safeguards that attend criminal proceedings generally." *Id.*, at 764 (internal quotation marks and citation omitted).

¶ 26 In the present case, just as in *Hyle* and *Wetzel*, Godfrey does not have the present ability to comply with the trial court's order, which requires that to purge the contempt order he must secure employment. Although the trial court made Godfrey eligible for work release, such a program requires the participants to remain in custody while not working or looking for a job, which is clearly punitive in nature. Therefore, we have no choice but to vacate that portion of the order setting the purge condition as Godfrey's obtainment of employment.

¶ 27 On remand, in setting the condition for a purge, the trial court is directed "to determine what conditions will be sufficiently coercive yet enable [Godfrey] to comply with the order." *Hyle*, 868 A.2d at 606. Furthermore, if necessary, "the trial court is free to receive additional evidence to assist it in its determination." *Id.*

¶ 28 We fully appreciate the trial court's frustration in dealing with Godfrey's recalcitrance; however, "[a] court may not convert a coercive sentence into a punitive one by imposing conditions that the contemnor cannot perform and thereby purge himself of the contempt." *Id.* (quot-

ing *Barrett,* 470 Pa. at 262, 368 A.2d at 621). That being said, we repeat that "the trial court is also free to choose to adjudicate [Godfrey] for indirect criminal contempt, provided that [Godfrey] is afforded all of the procedural rights and safeguards afforded to criminal defendants." *Id. See also, Wetzel,* 541 A.2d at 764.

¶ 29 Lastly, we address Godfrey's argument that the trial court erred in imposing a bond requirement pursuant to Section 4347 of the Domestic Relations Code. As mentioned, after sentencing Godfrey to consecutive terms of imprisonment for contempt, the trial court further ordered that

> [p]ursuant to 23 [PA.CONS.STAT.ANN.] § 4347, the [c]ourt directs that the Defendant not be released from incarceration even at the expiration of the two (2) contempt sentences unless he posts a bond in the amount of Twenty-five Thousand Dollars ($25,000.00) to secure payment of his child support, this [c]ourt being convinced that the Defendant has habitually failed to comply with [c]ourt [o]rders and does not intend to pay child support even if employed.

Order, 4/7/05, at 4. Godfrey argues that this amounts to a life sentence as he has no means to pay the bond. *See* Appellant's Brief, at 12.

¶ 30 Section 4347 states the following:

> At any stage of the proceedings under this chapter, upon affidavit filed that the obligor is about to leave this Commonwealth or the judicial district or, where in the judgment of the court, the obligor has habitually failed to comply with court orders under this chapter, the court may, as prescribed by general rule, issue appropriate process directing that the obligor be brought before the court and may direct that the obligor give security to appear when directed by the court or to comply with any order of the court.

23 PA.CONS.STAT.ANN. § 4347.

¶ 31 This matter came before the trial court in a contempt proceeding where the trial court imposed consecutive sentences for civil contempt. As the learned trial court knew, Godfrey had been held in contempt on three prior occasions for failing to pay support and had failed to appear for hearings. Accordingly, the trial court was well within its discretion to direct that Godfrey post a bond to ensure future payments and appearances.

¶ 32 In relation to the amount of the bond, however, Godfrey offered evidence at the hearing that he does not have the present ability to pay the bond prior to being released from prison. In fact, there was no evidence offered that is capable of supporting an inference that Godfrey has the present ability to pay the bond requirement. The bond requirement the trial court has imposed thus converts the coercive sentence based on the finding of civil contempt into a punitive sentence. Absent constitutionally mandated criminal safeguards, this punitive aspect of the sentence is constitutionally impermissible. As such, we must find that the imposition of the bond requirement constitutes an abuse of discretion.

¶ 33 Order affirmed in part and vacated in part. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.