J-A17003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COLLEEN MULLEN MELCHIORRE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PAUL L. MELCHIORRE | : | |
| | : | |
| Appellant | : | No. 3400 EDA 2019 |

Appeal from the Order Entered November 4, 2019
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  No. D01068461

BEFORE:  BOWES, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 26, 2020**

Paul L. Melchiorre ("Husband") appeals from the November 4, 2019 order finding him in civil contempt for willfully failing to comply with the terms of a post-nuptial agreement ("Agreement") with his former wife, Colleen Mullen Melchiorre ("Wife").  After review, we affirm.

The relevant facts are as follows.  Husband and Wife entered into the Agreement on June 8, 2001, which was incorporated but not merged into the divorce decree of July 18, 2001.  In the Agreement, the parties addressed Husband's non-vested stock options from his employer, Ariba, Inc. ("Ariba"), totaling 1,269,317 shares, that were in his name only.  The parties agreed:

> Husband has non-vested stock options from his employer, Ariba, Inc., also set forth on Exhibit "A" attached.  Upon vesting, Wife shall be entitled to request that Husband sell one-half (1/2) of the shares exercisable at each time and Wife will be paid the net proceeds thereof after deduction of commissions and any applicable capital gains taxes to Husband.

Post-Nuptial Agreement, 7/18/01, at ¶7(d).  Paragraph 11 of the Agreement, provided that within fifteen days after demand, each of the parties would execute any and all written instruments necessary to effectuate their Agreement.

Seventeen years later, Wife found her copy of the Agreement while going through her papers.  Upon reviewing the Agreement, she realized that she had never received her one-half share of the Ariba stock, and she asked Husband about it.  While he acknowledged that the stock had been sold, Husband refused to provide any information about the proceeds.  Wife retained counsel, who subsequently requested documentation.  When Husband was not forthcoming, Wife filed a petition for contempt and enforcement of the Agreement on July 25, 2019.

The trial court scheduled a hearing for November 4, 2019.  Thereafter, Husband filed an answer to Wife's petition, and four days prior to the scheduled hearing, Husband filed a motion for judgment on the pleadings.  At the November 4 hearing, the trial court first heard oral argument regarding the motion for judgment on the pleadings, and denied the motion.  It then heard testimony and argument on Wife's petition.  The trial court concluded that Wife's claim was not barred by the statute of limitations, the doctrine of laches, or waiver.  Based on the evidence presented, the court held Husband in civil contempt, imposed sanctions, and delineated how he could purge himself of contempt by executing the necessary authorizations, providing

- 2 -

financial documents, and remitting attorney fees of $ $5,202.18 to Wife within thirty days. Husband filed a motion for reconsideration on November 15, 2019, which was denied. He filed a timely appeal on November 27, 2019. Thereafter, he filed a petition for *supersedeas* and determination of security to be posted during the pendency of the appeal, which was denied on January 31, 2020. Both Husband and the trial court complied with Pa.R.A.P. 1925.

Husband presents five issues for our review:

1. Did the trial court commit an error of law or abuse its discretion by denying Husband's motion for judgment on the pleadings by finding that the statute of limitations did not bar Wife's petition for special relief to enforce the marital settlement agreement and find Appellant in contempt?

2. Did the trial court commit an error of law or abuse its discretion by denying Husband's motion for judgment on the pleadings by finding that the doctrine of latches did not bar Wife's petition for special relief to enforce the marital settlement agreement and find Appellant in contempt?

3. Did the trial court commit an error of law or abuse its discretion by denying Husband's motion for judgment on the pleadings by finding that the doctrine of waiver did not apply to the releases set forth in the Post-Nuptial Agreement and thus, should have denied Wife's petition for special relief[?].

4. Did the trial court abuse its discretion by finding Husband in civil contempt for failing to acknowledge debt to Wife?

5. Did the trial court commit an error of law or abuse its discretion by conducting an evidentiary hearing and taking testimony from the parties on Husband's motion for judgment on the pleadings?

Appellant's brief at 8.

Appellant's first three issues, which implicate the statute of limitations, the doctrine of laches, and waiver, present questions of law. **See K.A.R. v. T.G.L.**, 107 A.3d 770, 775 (Pa.Super. 2014) (statute of limitations and laches are questions of law); **Temple v. Providence Care Ctr., LLC**, 2020 Pa. LEXIS 3841, *19 (applicability of waiver presents a question of law). Hence, our standard of review is *de novo*, and our scope of review is plenary. However, we are bound by the trial court's credibility determinations. **Id**. (citing **Stamerro v. Stamerro**, 889 A.2d 1251, 1257-58 (Pa.Super. 2005)).

Husband cites **Stamerro**, **supra**, in support of his contention that the statute of limitations applicable to this non-merged marital settlement agreement is the four-year statute of limitations for contracts generally.[1] He claims the trial court erred in finding that this was a continuing contract where there was a definitive time fixed for payments, as well as a requirement that Wife make a demand. **See** Appellant's brief at 19. He argues Wife's right to institute her claim began when each set of Ariba stock vested, which dates were provided to her, and the last of which vested in 2004. Thus, he contends that there were "effectively, three separate contracts with defined times fixed for payment, to wit: January 1, 2002; 192,000 shares vest January 1, 2003; and, 255,984 shares vest January 1, 2004," and that "Wife had four years

---

[1] Herein, the post-nuptial agreement was expressly incorporated but not merged into the divorce decree. In such circumstances, the agreement survives the divorce and is governed by contract law. **See McGough v. McGough**, 522 A.2d 638 (Pa.Super. 1987).

- 4 -

from each date to assert for claim and make a request to Husband to sell one-half (1/2) of the Ariba stock." Appellant's brief at 19. From this perspective, the burden was on Wife to make the demand. *Id*. In support of his position, Husband cites our decision in *K.A.R.*, *supra*, as analogous and controlling herein.

The trial court concluded that the contract was a continuing one because although Wife agreed that she would not request her share before the stock had vested, the Agreement contained no time limit on the request. Thus, there was no fixed time for payment. Additionally, Husband acknowledged that he owed his Wife a debt equal to one-half of the net proceeds from the sale of the Ariba stock, which tolled the statute of limitations on a continuing contract. *See Crispo v. Crispo*, 909 A.2d 308, 313 (Pa.Super. 2006) (providing that acknowledgment of a debt consistent with a promise to pay a debt may toll the statute of limitations or remove its bar). Hence, the trial court ruled that Wife could proceed on the debt even though seventeen years had passed since the Agreement as the statute of limitations did not preclude the enforcement action.

In arriving at that holding, the court distinguished *K.A.R*., *supra*. The marital agreement therein was not a continuing one as the "if and when" language in the equitable distribution agreement set forth a fixed time for payment. Furthermore, the wife knew of the sale of the business in April 2004, but waited until 2011, more than two years after the expiration of the

four year statute of limitations, to file a petition for enforcement. Hence, this Court concluded that even with the operation of the discovery rule, the wife's petition was time-barred.

The trial court's interpretation of the Agreement is in accord with its plain meaning. Wife was under no obligation to ask Husband to sell one-half of the stock as it vested; she was merely entitled to do so. Husband, on the other hand, was obligated to pay Wife one-half of the net proceeds from the sale of the stock, whenever Wife tendered such a request.[2] Herein, Husband testified that he could sell the stock any time before the option expired, a term that he believed was ten years from its issuance. Since Husband was the sole owner of the stock, only he could sell it, and unless he notified Wife of the sale, she had no way of independently acquiring knowledge of the sale. Once Wife learned in 2018 that Husband had sold the stock, she promptly requested her one-half share of the net proceeds, and Husband refused to comply with his obligations under the Agreement.

The law is well-settled that the statute of limitations begins to run as soon as the right to institute suit arises. *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005). The test, however, of whether a contract is continuing in nature so as to take it outside the stature of limitations, is whether there was no

---

[2] Husband testified that he did not sell the Ariba stock as the options vested. *See* N.T., 11/5/19, at 50. Rather, he waited until it was at its highest value, which was sometime prior to 2008. *Id*. He admitted that he never informed Wife when he sold the stock. *Id*. at 51.

- 6 -

definite time fixed for payment. **K.A.R**., **supra** at 775 (citing **Crispo**, **supra** at 313). In **Crispo**, we found a continuing contract where, although the wife agreed to defer payment of her $22,500 share in the business until 2001, and then accept installment payments over ten years or more, the agreement did not provide a start date for the first installment. Nonetheless, the terms of the agreement clearly evinced the husband's intent to pay the wife what they deemed to be a fair share of her interest in his business. This Court found it "disingenuous" for the husband to claim that the wife's failure to make a demand within a certain time frame barred her from recovering an amount he admittedly owed. Since obligations under the marital agreement were continuing, the statute of limitations defense was unavailable to the husband.

Herein, although the vesting dates were known, and Wife was entitled to demand that Husband sell her share of the stock at those times, she was not required to do so. In addition, she was not compelled under the Agreement to demand her share of the stock at any particular time. The Agreement contained no definite time for the sale of the stock, and hence, no definite time for payment of Wife's share of the proceeds from a sale. The trial court concluded, and we agree, that the Agreement was a continuing contract. Moreover, Husband acknowledged in the Agreement that Wife was owed one-half of the net proceeds from the sale of the Ariba stock. His acknowledgment of the debt takes this continuing contract outside the statute of limitations.

Husband argues in the alternative that Wife's claim is barred by the doctrine of laches. He contends that Wife knew when the stocks vested, and she failed to exercise due diligence by waiting almost eighteen years to assert her right. *See* Appellant's brief at 14. He claims that he was prejudiced by the delay because he was forced to hire counsel and track down the stock and related documents.

As this Court reaffirmed in *In re Estate of Aiello*, 993 A.2d 283, 287 (Pa.Super. 2010), in order to successfully invoke laches, one must establish: (a) a delay arising from petitioner's failure to exercise due diligence; and (b) prejudice to the respondents resulting from the delay. Prejudice is a factual question, and is determined by examining the circumstances of each case. *Id*. Prejudice in this context means that respondent must have changed his position to his detriment. *Id*. Moreover, "laches is an equitable doctrine that should not be applied in favor of a person who has failed to take required action on his own." *Id*.

Husband had the burden of proving laches, and he failed to do so. He did not notify Wife when he sold the Ariba stock. Nor did Husband pay Wife her one-half share of the net proceeds when the sale was consummated. Having failed to do what he was contractually obligated to do, he cannot seek refuge in the equitable doctrine of laches. Furthermore, he did not demonstrate that he changed his position to his detriment as a result of Wife's delay in requesting payment, the requirement for prejudice. The fact that

Husband hired a lawyer has no bearing upon any alleged lack of diligence on Wife's part, but is the natural consequence of his own failure to pay Wife the sums owing. Since Husband knew that Wife was entitled to one-half of the proceeds of the stock sale, and declined to notify her that he had sold the stock, he failed to keep the documentation related to that sale at his own peril. Furthermore, we cannot disregard the trial court's finding that Husband's purported inability to locate this documentation was not credible, especially when he was able to produce a forensic accounting of the stock within weeks of the hearing. For these reasons, Husband has failed to establish the applicability of laches.

Finally, Husband's claim of waiver is grounded in what he calls the "Releases" provision of the Agreement. Husband claims that SECOND subparagraph (a), specifically the language "that he or she will never any time hereafter sue the other party or his or her heirs, etc. for the purpose of enforcing any of the rights relinquished under this paragraph...." is a waiver of the right to seek redress herein. Agreement, at 4. He contends that "by doing nothing, Wife effectively waived her right to enforce the agreement by waiting at least fourteen years to make a claim." Appellant's brief at 22. In addition, Husband alleges that "Wife can also be viewed as in complete breach of the agreement by disregarding all the releases that she had agreed to within the Agreement." *Id*.

Husband's claim of waiver is woefully undeveloped and lacking in analysis. Notably, the foregoing paragraph governing "Releases" is prefaced with the language "Except for as provided in this Agreement." Agreement, at 4. By entering the Agreement, the parties agreed to relinquish any **other** "past, present, and future claims against each other on account of maintenance and support, alimony . . . [a]nd also equitable distribution of marital property." *Id*. Wife's right to one-half of the net proceeds from the sale of the Ariba stock is clearly delineated in the Agreement, and she did not waive the right to enforce it. The "Releases" provision was not intended to preclude the parties from enforcing the terms of the Agreement, but from asserting claims as to support, alimony, and equitable distribution that were not preserved in the Agreement. We find no merit in Husband's claim.

Husband's fourth issue is a challenge to the trial court's finding of civil contempt. As this Court confirmed in **Annechino v. Joire**, 946 A.2d 121 (Pa.Super. 2008), a contempt proceeding is a proper vehicle for seeking enforcement of a marital settlement agreement entered into after passage of the Divorce Code. **See** 23 Pa.C.S. § 3105(a) of the Divorce Code (providing that parties to marital agreements may utilize a remedy set forth in that provision "to enforce the agreement to the same extent as though the as though the agreement had been an order of Court except as provided to the

- 10 -

contrary in the agreement.").[3] The order allegedly violated herein was the Agreement. **See also** 23 Pa.C.S § 3502(e)(9) (providing that "If, at any time, a party has failed to comply with an order of equitable distribution, . . . with the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available . . . in order to effect compliance . . . find the party in contempt.").

When a property settlement agreement is incorporated into a divorce decree, "the general rule in such proceedings is that the burden of proof rests with the complaining party to demonstrate, by [a] preponderance of the evidence that the defendant is in noncompliance with a court order." **Habjan v. Habjan**, 73 A.3d 630, 637 (Pa.Super. 2013) (citation omitted). To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. **Id**. (citing **Stahl v. Redcay**, 897 A.2d 478, 489 (Pa.Super. 2006).

---

[3] In addition, 23 Pa.C.S § 3502(e)(9)—provides that "If, at any time, a party has failed to comply with an order of equitable distribution, . . . with the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available . . . in order to effect compliance . . . find the party in contempt.

"Our scope of review when considering an appeal from an order holding a party in contempt of court is narrow: We will reverse only upon a showing of an abuse of discretion." *Orfield v. Weindel*, 52 A.3d 275, 278 (Pa.Super. 2012) (citation omitted). A "court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." *Godfrey v. Godfrey*, 894 A.2d 776, 780 (Pa.Super. 2006).

Husband contends that the trial court abused its discretion in finding him in civil contempt of the Agreement. He argues that he did not violate the Agreement because although he never informed Wife that he had in fact sold his shares of Ariba stock, and she had no knowledge of the sale, the onus was on Wife to either request the sale or demand payment without actual knowledge of the sale. *See* N.T., 11/4/19, at 50-51; Appellant's brief at 23. Until then, Husband maintains that he had no debt to acknowledge. *Id*. Furthermore, he claims that his failure to produce information about the Ariba stock in response to Wife's request was "not volitional." *Id*. at 24. He directs our attention to his testimony that he "made every attempt" to retrieve the information and was hindered by the passage of time. N.T., 11/4/19, at 42. Finally, he asserts that he did not act with wrongful intent. Appellant's brief at 24.

The trial court found Husband testified "incredulously" that he was "unable to locate any financial documents regarding the sale of the Ariba [s]tock." Trial Court Opinion, 2/11/20, at unnumbered 4 (quoting N.T.,

11/4/19, at 58. The court found additional support for its credibility determination when "on December 2, 2019, a mere 28 days after his testimony, Husband provided a detailed forensic accounting of the sale of the Ariba stock." *Id*. at n.1. Moreover, the trial court found that Husband acknowledged in the Agreement that he owed Wife one-half of the net proceeds from the sale of the stock, and that he violated the Agreement when he failed to remit one-half of the net proceeds to Wife from the sale of the 1,269,317 shares of Ariba Stock. *See* Trial Court Opinion, 2/11/20, at unnumbered 5. The court found the language of the Agreement to be "straightforward," and we agree. N.T., 11/4/19, at 14.

We defer to the trial court's finding that Husband's professed inability to provide the requested documentation lacked credibility, as we must. Furthermore, we agree that the Agreement unambiguously obligates Husband to pay Wife one-half of the net proceeds of Ariba stock upon demand, and that Husband violated the Agreement when he refused to do so. On the facts before us, we find no abuse of discretion on the part of the trial court in holding Husband in civil contempt.[4]

Order affirmed.

---

[4] Husband withdrew his fifth issue after conceding that the trial court properly held argument on the judgment on the pleadings, and then took testimony on the petition for civil contempt and enforcement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/26/20