J-S02036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SIMONE T. ROY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN C. ROY | : | |
| | : | |
| Appellant | : | No. 1869 EDA 2023 |

Appeal from the Order Entered July 6, 2023
In the Court of Common Pleas of Northampton County Domestic
Relations at No(s):  Docket No: 37520

BEFORE:   LAZARUS, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED MARCH 13, 2024**

Appellant John C. Roy files this *pro se* appeal from the order entered by the Court of Common Pleas of Northampton County finding Appellant in civil contempt for failing to pay court-ordered support. Appellant claims the trial court erred in imposing coercive imprisonment with a purge condition that Appellant did not have the present ability to meet. We are constrained to vacate the trial court's order in part and remand for further proceedings.

In June 2020, the trial court ordered Appellant to pay $1,841 per month in support and arrearages for his wife, Simone T. Roy, and the parties' three children. Notes of Testimony (N.T.), 6/13/23, at 2, 4. Thereafter, Appellant did not pay his court-ordered support and his whereabouts were unknown for a substantial amount of time.

---

[*] Former Justice specially assigned to the Superior Court.

Nearly three years later, after Appellant had been located, a contempt petition was filed against Appellant on February 10, 2023. At a March 14, 2023 hearing, the trial court held Appellant in contempt for his failure to pay court-ordered support. N.T. at 2. The trial court sentenced Appellant to six months' imprisonment with work-release eligibility and set the purge amount at $2,500. Appellant paid the purge amount immediately and was released.

On April 11, 2023, Appellant filed a petition to modify his support obligations. After a hearing, the trial court entered an order on June 12, 2023, reducing Appellant's support obligations to $1,488.00 per month ($1,240.00 for basic support and $248.00 for arrears) for two children as one of the parties' children had reached the age of majority and spousal support was eliminated as a result of the parties' divorce. N.T. at 2-3. The trial court calculated the support obligation using the assessed earning capacity for both parties. In particular, Appellant's earning capacity was assessed as the income of a construction manager, a position he had held for ten years before he voluntarily left this line of work to move to the Philippines, where Appellant claimed to earn significantly less income.

In the meantime, as Appellant had not paid any support since the $2,500 purge condition in March 2023, another contempt petition was filed against Appellant in May 2023. At a hearing held on June 13, 2023, the conference officer reported that Appellant's total costs and arrears had amounted to $31,196.53. N.T. at 3.

Appellant testified that at the time the original support order was entered, he worked as a handyman 80 hours/week and lived out of his truck. N.T. at 6-7. Appellant indicated that during the COVID-19 pandemic, he met a woman online, got married, moved to the Philippines, and had a baby with his new wife. N.T. at 6-7.

While Appellant averred that he and his new wife started a call center business in the Philippines, it required significant expenses, which resulted in less income. N.T. at 6-8. Appellant admitted that he received $40,000 in Paycheck Protection Program (PPP)[1] loans during the COVID-19 pandemic, which he invested into an unsuccessful gym venture. N.T. at 8. The conference officer interjected that Appellant had previously told her that he invested $75,000 into the gym venture, which Appellant admitted was correct. N.T at 9. Appellant informed the trial court that his wife and new child were still in the Philippines and alleged that his passport had been revoked due to his extensive arrearages in support obligations at issue in this case.[2]

Simone Roy, Appellant's ex-wife, testified that while Appellant had claimed that he had lived in his truck when the initial support order was entered, Appellant had two rental apartments which provided him income

_____

[1] PPP loans were backed by the U.S. Small Business Administration to help "businesses keep their workforce employed during the COVID-19 crisis." https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program.
[2] Federal law authorizes the U.S. State Department to revoke, restrict, or limit a previously-issued U.S. passport of a parent who has child support arrearages of at least $2,500. **See** 42 U.S.C. § 652(k).

from Airbnb of over $90,000 when the couple had filed a joint tax return during their marriage. N.T. at 15-16.

Appellant did not provide the trial court with an income and expense statement. While the trial court pointed out that Appellant paid $2,500 immediately when the trial court had previously found him in contempt in March 2023, Appellant indicated he borrowed that sum from another individual and it took Appellant two months to pay the loan back. N.T. at 4-5.

Appellant admitted he had the ability to work and had been going to job interviews to find employment. N.T. at 8. Appellant asked if he could get the trial court $2,000 by the end of that week, but the trial court found that offer to be insufficient given Appellant's extensive arrearages. N.T. at 12. When the trial court asked Appellant how much money he thought he could make on work release, Appellant indicated he could make $1,500/month. N.T. at 18. Appellant also shared that he had a court hearing the following day to seek $11,000 from an unknown individual. N.T. at 21.

At the conclusion of the hearing, the trial court found Appellant in contempt and sentenced him to six months' imprisonment with immediate work release eligibility. The trial court indicated that it set a purge condition of $9,000, as it found that there was "no indication that [Appellant] for whatever reason is unable to work." N.T. at 21. Further, the trial court reasoned that as Appellant had testified that he could possibly earn $1,500/month on work release, Appellant had admitted that he had the ability to pay $9,000 through six months of work release. N.T. at 21.

Immediately thereafter, Appellant fell to the floor and asked to be shot so that his children would get survivor benefits. N.T. at 19. When the sheriff declined to shoot Appellant and indicated he would carry Appellant out of the courtroom, the trial court directed that Appellant be put on suicide watch. N.T. at 22-23. Appellant promised to get up if he was not put on suicide watch. N.T. at 23. Appellant was escorted out of the courtroom.

While the trial court announced its finding of contempt in court at the June 13, 2023 hearing, a final order was not filed until July 5, 2023 and was sent to the parties on July 6, 2023.[3] This timely appeal followed.[4]

On appeal, Appellant claims the trial court erred in imposing a purge amount that he was unable to pay.[5] As noted above, the trial court sentenced

_____

[3] Our courts have held that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given." *Carr v. Michuck*, 234 A.3d 797, 805 (Pa.Super. 2020) (quoting *Frazier v. City of Philadelphia*, 735 A.2d 113 (Pa. 1999)).

[4] After the appeal was filed, Appellant filed an application for writ of habeas corpus. On October 13, 2023, this Court entered a *per curiam* order denying the application without prejudice for the trial court to review the application for writ of habeas corpus filed in the trial court. This Court directed the trial court to make a determination as to the application and transmit a decision including an explanation for its reasons to this Court. In an order and opinion dated October 23, 2023, the trial court denied Appellant's petition for writ of habeas corpus. Appellant has not appealed or challenged this decision.

[5] Appellant's brief does not comply with our rules of appellate procedure which require that the argument section of the brief "be divided into as many parts as there are questions to be argued," and shall include "such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). While Appellant included nine issues in his "Errors in Court's memorandum opinion" section of his brief, his argument section of the brief only addresses one claim. Thus, we limit our analysis to Appellant's developed claim that the trial court erred in imposing a purge amount beyond his present ability to pay.

Appellant to six months' imprisonment and set a $9,000 purge amount after finding Appellant in contempt for failing to pay court-ordered support.

Our standard of review is as follows:

> This court's review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. ***Bold v. Bold***, 207 Pa.Super. 365, 939 A.2d 892, 894–895 (2007). "If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused." ***Gates v. Gates***, 967 A.2d 1024, 1028 (Pa.Super. 2009).

***Cunningham v. Cunningham***, 182 A.3d 464, 471–72 (Pa.Super. 2018).

To properly analyze Appellant's argument, it is essential to understand the difference between civil and criminal contempt:

> [c]ivil contempt has as its dominant purpose to enforce compliance with an order of court for the benefit of the party in whose favor the order runs, while criminal contempt has as its dominant purpose, the vindication of the dignity and authority of the court and the protection of the interest of the general public. This distinction between civil and criminal contempt is important because the type of contempt being punished will determine the manner in which the contempt is to be adjudicated as well as the punishment which may be imposed. It must be noted that the characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of civil contempt by complying with the court's directive.

***Godfrey v. Godfrey***, 894 A.2d 776, 782 (Pa.Super. 2006).

Appellant was found in civil contempt for noncompliance with a support order pursuant to 23 Pa.C.S.A. § 4345 which provides:

> (a) General rule.--A person who willfully fails to comply with any order under this chapter, except an order subject to section 4344 (relating to contempt for failure of obligor to appear), may, as

- 6 -

prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

(1) Imprisonment for a period not to exceed six months.

(2) A fine not to exceed $1,000.

(3) Probation for a period not to exceed one year.

(b) Condition for release.--An order committing a defendant to jail under this section shall specify the condition the fulfillment of which will result in the release of the obligor.

23 Pa.C.S.A. § 4345.

Our courts have held that:

"[t]o be found in civil contempt, a party must have violated a court order." *Hyle v. Hyle,* 868 A.2d 601, 604 (Pa.Super. 2005) (citing *Garr v. Peters,* 773 A.2d 183, 189 (Pa.Super. 2001)). Therefore, "the complaining party must show, by a preponderance of the evidence, that a party violated a court order." *Id.* (citing *Sinaiko v. Sinaiko,* [] 664 A.2d 1005, 1009 ([Pa.Super.] 1995)). "The alleged contemnor may then present evidence that he has the present inability to comply and make up the arrears." *Id.* (citing *Barrett v. Barrett,* 470 Pa. 253, 264, 368 A.2d 616, 621 (1977)).

When the alleged contemnor presents evidence that he is presently unable to comply [with a support order]

> the court, in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced **beyond a reasonable doubt**, from the totality of the evidence before it, the contemnor has the present ability to comply.

*Id.,* at 604–605 (quoting *Barrett,* 470 Pa. at 264, 368 A.2d at 621) (emphasis in original).

*Godfrey*, 894 A.2d at 782–83. Our Supreme Court has explained that a trial court must be convinced beyond a reasonable doubt of an individual's present ability to comply with the purge condition for a coercive sentence for civil contempt as "[a] trial court cannot condition a person's avoidance of release

- 7 -

from imprisonment on his performing acts beyond his power to perform[, which would] in effect[,] convert a coercive sentence into a penal one without the safeguards of criminal procedure." ***Barrett***, 368 A.2d at 621.

Appellant does not challenge the trial court's decision to find him in contempt. Since Appellant's support obligation was established in June 2020 requiring Appellant to pay both child and spousal support, Appellant did not make any payment other than the $2,500 he submitted in March 2023 to purge himself from the previous contempt finding. As a result, Appellant concedes that he has accrued substantial arrearages which amounted to $31,196.53 at the time of the hearing at issue.

However, Appellant claims that the trial court abused its discretion in imposing the $9,000 purge condition when the trial court had not made a proper finding that Appellant was capable of paying that amount at the time he was found in contempt. We are constrained to agree.

"[T]he law in this Commonwealth is [] that the trial court must set the conditions for a purge in such a way as the contemnor has the **present ability** to comply with the order." ***Godfrey***, 894 A.2d at 782–83 (quoting ***Hyle***, 868 A.2d at 605) (emphasis in original).

> Clearly, if the contemnor presently lacks the resources to fulfill his duty of support, he is not likely to obtain them while languishing in prison. Thus the justification for imprisonment in civil contempt cases ceases if such imprisonment can have no coercive effect, and imprisonment under such circumstances is an abuse of the court's discretionary power in civil contempt.

***Barrett***, 368 A.2d at 621.

In ***Barrett***, our Supreme Court concluded that the trial court had improperly committed Barrett to a term of imprisonment for civil contempt when there was insufficient evidence that Barrett had the present ability to comply with the purge condition. Barrett had given "essentially uncontradicted but also uncorroborated" testimony that he voluntarily left his job, was supported by his girlfriend, and his only assets were vehicles that did not have any resale value. ***Id***. The Supreme Court found that while the trial court was not bound by Barrett's testimony as to his financial resources, the trial court could not make a finding of Barrett's present resources, as a basis for coercive imprisonment, "without support in the record other than the husband's lack of credibility." ***Id***.

Similarly, in ***Hyle***, this Court affirmed the trial court's order finding Hyle in contempt for his failure to pay court-ordered support but vacated the purge condition of $2,500. In that case, the trial court had determined that the purge amount was "well within [Hyle's] means to accomplish by working for a short period of time" and made Hyle eligible for work release so that he could obtain employment. ***Hyle***, 868 A.2d at 605.

This Court found that Hyle did not have the present ability to comply with the purge amount, but rather his ability to comply would only occur sometime in the future as Hyle first had to find employment and then earn $2,500 while in prison. Thus, this Court vacated the purge condition and remanded for the "trial court to determine what conditions will be sufficiently coercive yet enable [Hyle] to comply with the order." ***Id***. at 606. ***See also***

***Godfrey***, 894 A.2d 783 (finding trial court's order setting purge amount was improper as it required the appellant to secure employment while in prison, which was "clearly punitive in nature").

Likewise, in this case, the trial court did not evaluate Appellant's present ability to comply with the $9,000 purge amount that it set. The trial court emphasized that Appellant was not a credible witness as to his income and assets, but did not make any finding relevant to Appellant's present resources. Further, the trial court specifically stated that its rationale for imposing this purge amount was the lack of evidence that Appellant could not work and Appellant's testimony that he could possibly earn up to $1,500 a month once he found employment. N.T. at 21. The trial court's insistence that Appellant would be able to obtain employment and earn $9,000 while on work release only points to his future ability to comply with the court's order, not his present ability to pay the purge amount.

Thus, although the trial court was warranted in finding Appellant in contempt, there was insufficient evidence in the record to show Appellant had the present ability to comply with the $9,000 purge amount to avoid imprisonment. We acknowledge that the trial court was understandably frustrated with Appellant's failure to pay court-ordered support for his children and former spouse. However, "[a] court may not convert a coercive sentence into a punitive one by imposing conditions that the contemnor cannot perform and thereby purge himself of the contempt." ***Barrett****,* 368 A.2d at 621.

Accordingly, we must vacate the order setting the purge amount at $9,000 and remand for the trial court to impose conditions that will be "sufficiently coercive yet enable Appellant to comply with the order." ***Hyle***, 868 A.2d at 606. The trial court may choose to receive additional evidence in making this determination. We also note that "the trial court is also free to choose to adjudicate [Appellant] for indirect criminal contempt, provided that [Appellant] is afforded all of the procedural rights and safeguards afforded to criminal defendants." ***Id***.

Order affirmed in part and vacated in part. Case remanded for further proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/13/2024

- 11 -