J-S20034-24

2024 PA Super 240

| | | |
|---|---|---|
| JENNIFER LYNN ADAMS O/B/O T.E.A., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| ROBERT L. ADAMS, JR. | : : : | |
| Appellant | : | No. 1295 MDA 2023 |

Appeal from the Order Entered September 11, 2023
In the Court of Common Pleas of York County Civil Division at No(s):
2023-FC-000452-12A

BEFORE: OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:          **FILED OCTOBER 17, 2024**

Appellant Robert L. Adams, Jr. appeals from the order entered by the Court of Common Pleas of York County denying his petition requesting that Jennifer Lynn Adams be held in contempt for her failure to comply with the parties' consent agreement. After careful review, we vacate the trial court's order and remand for further proceedings.

On March 1, 2023, Ms. Adams filed a Petition for Protection from Abuse (PFA) against Appellant on behalf of the couple's minor daughter, T.E.A. ("Child").[1,2] On April 14, 2023, the trial court entered a final PFA order by

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Section 6106 of the Protection from Abuse Act ("PFA Act") provides that "any parent, adult household member, or guardian *ad litem* may seek relief under this chapter on behalf of minor children, by filing a petition with the court alleging abuse by the defendant." 23 Pa.C.S.A. § 6106(a).

[2] While the current caption does adequately explain that Ms. Adams filed this action on behalf of her minor daughter, T.E.A., it would be preferable for the

*(Footnote Continued Next Page)*

agreement of the parties without an admission of abuse, requiring that Appellant have no contact with Child for one year. The PFA order also contained a provision acknowledging the parties agreed to exchange certain belongings (both of a personal and business nature), which were listed in a separate exhibit that contained printed and handwritten items. The PFA order stated that "the exchange shall occur within thirty days" with the assistance of a third-party intermediary named by the trial court. PFA order, 4/14/23, at 1. The PFA order also noted that both parties were represented by counsel in reaching the terms of the consent order.

On July 12, 2023, Appellant filed a petition for contempt, arguing that Ms. Adams failed to exchange or return various items as directed by the PFA order. The trial court scheduled a hearing on the petition and directed the parties to submit briefs on the issue of whether a parent filing a PFA petition on behalf of her minor child could be held in contempt of a PFA order. While Appellant submitted a brief in support of his petition, Ms. Adams did not file a brief. It appears that at that point in the litigation, Ms. Adams was no longer represented by counsel.

On September 11, 2023, the trial court entered an order finding that Appellant, as a defendant in a PFA action, did not have standing to file a

_____

caption to comply with Pa.R.C.P. 2028, which governs actions by and against minors. Rule 2028 provides that "an action in which a minor is plaintiff shall be entitled "A, a Minor, by B, Guardian." Thus, the caption in this case would read, "T.E.A., a Minor, by Jennifer Lynn Adams, her parent and natural guardian."

petition for contempt based on a consent agreement approved by the trial court. The trial court cited Section 6114.1 of the PFA Act, which states that "[a] *plaintiff* may file a petition for civil contempt with the issuing court alleging that the defendant has violated any provision of an order or court-approved agreement issued under this chapter or a foreign protection order." 23 Pa.C.S.A. § 6114.1 (emphasis added).[3]

More specifically, the trial court reasoned as follows:

[Section 6114.1] only allows a plaintiff to file a petition for contempt against a defendant, not only for [an] alleged violation of a court order but also for an alleged violation of a court-approved agreement as exists in this matter. The mother of the Plaintiff, Jennifer Adams, is not a party in this matter, and the fact that she entered into the PFA agreement on behalf of the minor Plaintiff, as any adult must do when a minor is the plaintiff in a PFA proceeding, does not make Ms. Adams a party by extension. Even if Ms. Adams were somehow to be considered the de facto plaintiff, [Appellant] would still be prohibited by statute from filing a petition for civil contempt since only a plaintiff is permitted to file such a petition.

Trial Court Opinion (T.C.O.), 11/15/23, at 3-4. This timely appeal followed.

Appellant raises the following issues for our review on appeal:

1. Whether the Trial Court erred as a matter of law in finding that 23 Pa.C.S. § 6114.1(a) precludes a Defendant from enforcing terms of an Order through a petition for civil contempt?

2. Whether the trial court erred as a matter of law in denying standing to [Appellant], pursuant to 42 Pa.C.S. § 1722(a)(1), which provides for the Supreme Court of Pennsylvania to be is vested [sic] with the exclusive power to "to [sic] prescribe and modify general rules governing (1) Practice, procedure, and the conduct of all courts …," as even if the language of 23 Pa.C.S.

---

[3] While the trial court purported to cite 23 Pa.C.S.A. § 1614.1 for this proposition, we assume the trial court meant to cite to 23 Pa.C.S.A. § 6114.1.

§ 6114.1(a) is tortured to construe that a Defendant is precluded from filing a petition for civil contempt, the General Assembly does not have the authority to create a statute governing the procedure and conduct of a court and the statute should be disregarded?

3. Whether the Trial Court erred in finding that only a Plaintiff and Defendant may be held in contempt, excluding a parent of a minor child who filed a petition on behalf of the minor, negotiated an agreement (with specific terms and obligations only the parent could perform) and entered into the agreed upon order on behalf of the minor Plaintiff?"

Appellant's Brief, at 4-5.

Appellant first claims that the trial court erred in finding that Appellant did not have standing to file a petition for contempt to enforce the terms of a PFA consent order which had been entered upon agreement of the parties. As noted above, the trial court interpreted Section 6114.1 to find that only plaintiffs are permitted to file petitions for civil contempt against defendants for violations of orders or court approved agreements issued in a PFA action.

Our standard of review for questions of statutory interpretation is as follows:

Statutory interpretation is a question of law, therefore our standard of review is *de novo,* and our scope of review is plenary. **Commonwealth v. Hall**, 622 Pa. 396, 80 A.3d 1204, 1211 (2013). "In all matters involving statutory interpretation, we apply the Statutory Construction Act, 1 Pa.C.S. § 1501 **et seq.**, which provides that the object of interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." **Commonwealth v. McCoy**, 599 Pa. 599, 962 A.2d 1160, 1166 (2009) (citation omitted).

Generally, a statute's plain language provides the best indication of legislative intent. **Id.** We will only look beyond the plain language of the statute when words are unclear or ambiguous, or the plain meaning would lead to "a result that is absurd,

- 4 -

impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1). Therefore, when ascertaining the meaning of a statute, if the language is clear, we give the words their plain and ordinary meaning. **Hall**, 80 A.3d at 1211.

**Commonwealth v. Torres-Kuilan**, 156 A.3d 1229, 1231 (Pa.Super. 2017) (citation omitted).

In applying these principles, we disagree with the trial court's restrictive interpretation of Section 6114.1. Although the plain language of Section 6114.1 states that "[a] plaintiff may file a petition for civil contempt with the issuing court alleging that the defendant has violated any provision of an order or court-approved agreement issued under this chapter or a foreign protection order," the trial court's interpretation that the General Assembly intended to exclude a defendant from filing a petition for civil contempt in a PFA proceeding when a plaintiff violates a consent order agreed upon by the parties would lead to an absurd result.

The PFA Act allows trial courts to grant broad relief to effectuate its purpose which is "to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." **K.B. v. Tinsley**, 208 A.3d 123, 127 (Pa.Super. 2019) (quoting **Buchhalter v. Buchhalter**, 959 A.2d 1260, 1262 (Pa.Super. 2008) (citations omitted)).

Section 6108 of the PFA Act provides that "the court may grant any protection order or *approve any consent agreement* to bring about a cessation of abuse of the plaintiff or minor children." 23 Pa.C.S.A. § 6108(a) (emphasis added). The statute enumerates a list of possible measures that a trial court

could take in support of its PFA order including by not limited to granting a plaintiff possession of the parties' residence to the exclusion of the defendant, awarding temporary custody of children, prohibiting the defendant from possessing a firearm for the duration of the order, as well as "*any other appropriate relief sought by the plaintiff*." 23 Pa.C.S.A. § 6108(a)(1)-(10) (emphasis added). Our Court has held that a PFA court "may order a defendant to return a plaintiff's personal property where procuring it herself would potentially subject her to danger." **Gerace v. Gerace**, 631 A.2d 1360, 1361–62 (Pa.Super. 1993).

Conversely, this Court has also determined that a trial court may enter a PFA consent order in which a victim agrees to pay money to the defendant or return the property of the defendant when this remedy would promote protection of the victim from further abuse. **Lee v. Carney**, 645 A.2d 1363, 1365 (Pa.Super. 1994). In **Lee**, this Court upheld a consent order entered in the context of a PFA proceeding which directed the victim to pay money to the perpetrator of the abuse and allow him to remove property from the parties' home. As Section 6108(a) provides that a PFA court "may … approve any consent agreement to bring about a cessation of abuse of the plaintiff or minor children," this Court clarified that the trial court has the discretion to choose appropriate remedies which may be agreed upon by the parties in a consent agreement. **Id**. at 1364-65. This Court provided that:

> [a]lthough at first blush it appears rather odd that a protection from abuse Order would require a *victim* to pay money to the perpetrator of the abuse, we do not believe that such a

requirement runs afoul of the purpose of the Act. Appellant wished protection from further abuse by appellee. Her payment of the fifteen hundred dollars ($1,500.00) to him, under the circumstances, may have worked to serve this very purpose.

*Id*. at 1365 (emphasis in original).

Importantly, this Court noted that the parties in *Lee* had agreed to the provision of payment by the victim to the defendant in a consent decree. This Court acknowledged that "a decree entered by consent of the parties is so conclusive that it will be reviewed only on a showing that an objecting party's consent was obtained by fraud or that it was based upon a mutual mistake.'" *Id*. (citation omitted). The *Lee* Court held that the consent order was enforceable as the appellant was counseled at the entry of the consent order, did not object to its provisions at the time of entry, and presented no evidence of fraud or mistake.

Further, this Court noted in *Lee* that "[a]s an appellate court, we do not judge the parties' wisdom in choosing mutually agreed upon terms which they seek to incorporate into an enforceable Order of court to terminate an abusive situation. When the Order succeeds in terminating the abuse, the purpose of the Act has been fulfilled." *Id*.

Similarly, in this case, the trial court entered a final PFA order by agreement of the parties without a finding of abuse. The PFA order incorporated the parties' consent agreement in which the parties agreed to exchange certain belongings. Both parties were counseled at the time of the entry of the consent order and neither party objected to its provisions. Ms.

Adams entered into this consent order and agreed to its terms in order to bring about a cessation of abuse against the minor child.

If we were to accept the trial court's interpretation of the law in this case, a petitioner in a PFA proceeding, seeking protection for themselves or their children, could agree to a consent order and disregard its provisions as the defendant would have no remedy to seek to enforce the consent order within the PFA proceedings. We do not believe that the General Assembly intended to remove the trial court's power to enforce its own order that it entered upon the agreement of the parties. We emphasize that it is well-established that "[c]ourts possess an inherent power to enforce their orders by way of the power of contempt." *Com., Dep't of Env't Prot. v. Cromwell Twp., Huntingdon Cnty.*, 613 Pa. 1, 23, 32 A.3d 639, 653 (2011) (quoting *Commonwealth v. Bowden*, 576 Pa. 151, 838 A.2d 740, 760 (2003) (quoting *Brocker v. Brocker*, 429 Pa. 513, 241 A.2d 336, 338 (1968))).

We also disagree with the trial court's finding that Ms. Adams could not be found in contempt of the parties' consent agreement because she was a non-party and her minor daughter, T.E.A., was the actual plaintiff. Although we have not found any applicable Pennsylvania law on point, the Third Circuit Court of Appeals has found that "[a] person who is not a party to a proceeding may be held in contempt if he or she has actual knowledge of a court's order and either abets the defendant or is legally identified with him." *Roe v.*

***Operation Rescue***, 919 F.2d 857, 871 (3d Cir. 1990).[4]  ***See also In re Ragas***, 859 S.E.2d 827, 832 (Ga.App. 2021) (acknowledging the need for a court's contempt power to "be broad enough to reach those who, while not a party to a decree, seek to subvert the effectuation of a court's decree") (citation omitted).

In this case, Ms. Adams acted as her minor daughter's agent and legal representative in filing this action on her behalf.  Ms. Adams negotiated the terms of the consent agreement with the assistance of counsel in exchange for Appellant's agreement to the entry of an uncontested PFA order.  Ms. Adams cannot claim she lacked actual knowledge of the PFA order which incorporated the consent agreement.  Thus, the trial court had the inherent power to find Ms. Adams in contempt to enforce the PFA order which was based on the consent agreement she had formulated with Appellant.

Accordingly, we vacate the trial court's order and remand for further proceedings to evaluate the merits of Appellant's contempt petition.

Order vacated.  Case remanded for further proceedings.  Jurisdiction relinquished.

---

[4] The decisions of federal courts, as well as those from other states, are not binding authority upon this Court, but we may consider them as persuasive authority. ***Commonwealth v. Lang***, 275 A.3d 1072, 1083 (Pa.Super. 2022) (citation omitted).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>10/17/2024</u>