J-A04018-25          2025 PA Super 100

| | | |
|---|---|---|
| MELANIE A. FETZER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN M. FETZER | : | |
| | : | |
| Appellant | : | No. 1503 MDA 2024 |

Appeal from the Order Entered September 12, 2024
In the Court of Common Pleas of Berks County Civil Division at No(s):
17-2408

BEFORE:  LAZARUS, P.J., NICHOLS, J., and SULLIVAN, J.

OPINION BY NICHOLS, J.:                    **FILED: MAY 8, 2025**

Appellant Jonathan M. Fetzer (Father) appeals the order that found him in contempt for noncompliance with various provisions of the court orders governing his custody arrangement with Appellee Melanie A. Fetzer (Mother) (collectively, Parents) for their two biological daughters:  N.M.F., born in September 2007, and A.V.F., born in June 2009 (collectively, the Children). After careful review, we vacate and remand with instructions.

By way of relevant background, Parents were married in April 2005 and separated at the beginning of 2017.  In February 2017, Mother initiated the instant custody litigation.  In June 2017, the parties entered into a stipulated custody agreement under which Mother was awarded primary physical custody of the Children.  Father was granted partial physical custody on Tuesday and Thursday evenings, every other weekend, and on various holidays.  This agreement provided that Parents would share legal custody of

the Children. Parents' divorce was finalized on or about August 6, 2018. The parties then engaged in extensive custody litigation for approximately four years, which included "multiple petitions for special relief, emergency relief, petitions for contempt of court, petitions to modify custody, and a motion for relocation." Trial Court Op., 10/31/24, at 2. Mother has retained primary physical custody of the Children, while Father has consistently been awarded partial physical custody.

As a result of this protracted litigation, the trial court filed a custody order on September 6, 2022, which provided, *inter alia*, that:

> None of the parties shall alienate or permit an attempt by anyone else to alienate the [Children] from the other parties. While in the presence of the [Children] none of the parties shall make any remarks or do anything which is derogatory or uncomplimentary to the other parties and it shall be the duty of each party to uphold the other parties as ones the [Children] should respect and love.

Custody Order, 9/6/22, at Appendix A ¶ 3.

On May 29, 2024, Mother filed an emergency petition for contempt, alleging that Father had violated the above-quoted alienation clause multiple times between December 2023 and the filing date of the emergency petition. *See* Mother's Emergency Petition for Contempt, 5/29/24, at ¶¶ 3-14. Mother alleged that Father had told the Children that Mother's family was engaged in "sex trafficking" through a spa owned and operated by Maternal Aunt.[1] *See*

---

[1] Father's concerns regarding the activities occurring at Maternal Aunt's spa were based upon Google searches indicating that prostitution was allegedly occurring in that establishment. *See* N.T., 7/10/24, at 5-11.

*id.* at ¶ 4 (reflecting Mother's claim that "[t]he statements [Father] is making to [the] Children are that [Mother's family] are rapists and sex traffickers because [Maternal Aunt] is Asian and operates a spa in Lancaster County").

On May 30, 2024, the trial court issued a rule to show cause and scheduled a contempt hearing for May 31, 2024. The same day the trial court filed its rule to show cause, Father submitted a request for a continuance, explaining that he had only retained counsel that day and required additional time to prepare a defense and "call witnesses" to testify regarding Mother's allegations. *See* Motion for Continuance, 5/30/24, at ¶¶ 6-8. At a hearing on Father's continuance request also held on May 30, 2024, Father's counsel explained that she was unable to appear with less than one day of notice. *See* N.T., 5/30/24, at 3, 8.

Ultimately, the trial court denied Father's request for a continuance despite being informed that its decision would force Father to appear without legal representation. *See id.* at 8. As a result, Father appeared *pro se* at the first contempt hearing on May 31, 2024. At that time, the trial court indicated that it would only grant Father a continuance to better prepare a defense if he agreed to the entry of an interim custody order awarding Mother sole legal and sole physical custody of the Children. *See* N.T., 5/31/24, at 3-4, 11-13. Father acquiesced, and the trial court filed an interim custody order to that effect. *See* Interim Custody Order, 6/3/24, at 1-2. This order expressly suspended all previous custody orders. *See id.* at ¶ 1. However, we note

that the interim order also included a clause that continued the prohibition against Parents engaging in "alienation or disparagement" with respect to each other. *Id.* at ¶ 5.

On June 17, 2024, the trial court reconvened the contempt hearing, and Parents each testified at said hearing. The final contempt hearing occurred on July 10, 2024, wherein Parents each testified again. On August 12, 2024, the trial court filed an order concluding that Father had violated the custody orders on eight separate occasions between October 2023 and May 2024.[2] *See* Trial Ct. Order, 8/12/24, at ¶¶ 5-23. In addition to Father's comments and actions regarding Mother's family members, the trial court also determined that Father had disparaged Mother to the Children in several

---

[2] On September 9, 2024, Father filed an interlocutory appeal from the order finding him in contempt, which was docketed by this Court at 1273 MDA 2024. *See Hanbicki v. Leader*, 294 A.3d 1234, 1239 (Pa. Super. 2023) ("[A] contempt order is final and appealable if the order contains (1) a present finding of contempt and (2) an imposition of sanctions."). Ultimately, this Court quashed the appeal on October 4, 2024. *See Fetzer v. Fetzer*, 1273 MDA 2024 (quashing Father's appeal from order entered August 12, 2024). While that matter was still pending, the trial court proceeded with the sanctions hearing, which was appropriate under these circumstances. *See Dovin v. Honey Brook Golf Club L.P.*, 325 A.3d 1282, 1289-90 (Pa. Super. 2024) ("[A] trial court may proceed further in any matter in which a non-appealable interlocutory order has been entered, notwithstanding the filing of a notice of appeal or a petition for review of the order.") (citing Pa.R.A.P. 1701(b)(6)); *see also* N.T., 9/11/24, at 3-4 (indicating the trial court held the sanctions hearing after concluding that Father's initial appeal was interlocutory and premature).

different text messages that were admitted during the contempt hearings.[3] *See id.*

On September 11, 2024, the trial court held a sanctions hearing and imposed the following conditions upon Father: (1) a six-month period of incarceration; (2) a mandatory $500 fine payable to the Berks County Court of Common Pleas; and (3) a total of $19,561 in attorney's fees to Mother. *See* Trial Ct. Order, 9/12/24, at ¶¶ 1-3. The trial court structured these sanctions so that Father could avoid most of his term of imprisonment by paying the $500 fine and at least $5,000 of the aforementioned attorneys' fees.[4] *See id.* at ¶ 3(b)-(c). However, the trial court required Father to serve "no less than seven (7) days in the Berks County Jail," before he would be eligible for release. *Id.* at ¶ 3(a).

---

[3] Seven of these distinct acts of contempt related to Father's violation of the non-alienation clause in the September 6, 2022 custody order. *See* Trial Ct. Order, 8/12/24, at ¶¶ 2, 8-23. The trial court also found that Father had violated a provision of a separate October 19, 2022 order, which required "[a]ll communication to any school or service provider" of the Children was to include both Parents. *See id.* at ¶¶ 4-7; Trial Ct. Order, 10/19/22, at ¶ 3. The trial court was primarily concerned, however, with Father's alleged acts of alienation and disparagement. *See* N.T., 5/30/24, at 8 ("[I]f I get a whiff of real alienation, I am shutting this thing down.").

[4] We note that the imposition of these particular contempt sanctions in the context of custody proceedings are generally permitted pursuant to 23 Pa.C.S. § 5323(g)(1)(i)-(ii), and (v). These permissible sanctions, however, remain "prescribed by general rule[.]" 23 Pa.C.S. § 5323(g)(1). Nothing in this provision of the statute purports to exempt contempt findings in custody proceedings from our well-established precedent distinguishing between civil and criminal contempt.

During the September 11, 2024 hearing, Father's counsel contemporaneously objected to the imposition of a mandatory sentence of imprisonment in the context of purportedly civil contempt proceedings. *See* N.T., 9/11/24, at 36 (stating that "a sanctions order for a certain time of imprisonment is a criminal contempt, so I believe that the seven days in [Berks County Prison] without able – the ability to purge himself prior to that time is a criminal contempt sanction and not a civil contempt sanction"). The trial court overruled Father's objection. *See id.* at 37. Father's involuntary imprisonment began immediately following the conclusion of the sanctions hearing. *See* N.T., 9/11/24, at 30 (directing that Father be taken immediately into custody by sheriff's deputies present in the courtroom).

On September 13, 2024, the trial court filed an order noting Father had paid the entire amount of attorneys' fees due to Mother and the $500 fine to the court. *See* Trial Ct. Order, 9/13/24, at ¶ 1. Consequently, the trial court *sua sponte* vacated the remainder of Father's mandatory jail term. *See id.* at ¶¶ 2-3 (directing that Father be immediately "RELEASED FROM CUSTODY" and vacating the remainder of Father's mandatory jail term). Nonetheless, there is no dispute that Father spent two days in jail with no prospect of release. Furthermore, his release was solely the result of the trial court's apparent change in heart, as opposed to Father's satisfaction of a purge condition.

On October 11, 2024, Father filed a timely notice of appeal from the sanctions order along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). On October 31, 2024, the trial court filed an opinion addressing Father's claims.

Our standard of review over findings of contempt in the trial court is "extremely narrow." **In re Davis**, 302 A.3d 166, 180 (Pa. Super. 2023) (*per curiam*). This Court will "reverse only upon a showing of an abuse of discretion." **Godfrey v. Godfrey**, 894 A.2d 776, 780 (Pa. Super. 2006) (citation omitted). A trial court abuses its discretion in this context if it "misapplies the law or exercises its discretion in a manner lacking reason." **Id**.

In his appellate brief, Father has asserted twelve separate issues for our consideration. **See** Father's Brief at 4-12. Since it is dispositive, however, we will begin by addressing Father's ninth claim, which he has framed as follows: "Whether the court abused its discretion when it imposed a criminal contempt sanction against Father by requiring him to serve a minimum of seven (7) days incarceration without the option to satisfy purge conditions[?]" **Id.** at 7. Specifically, Father argues that the trial court's imposition of a mandatory prison sentence was "not permissible in a civil contempt matter." **Id.** at 69. After careful consideration, we must agree.

Initially, the trial court contends that any claim concerning Father's imprisonment is moot since it vacated the portion of its order requiring that

- 7 -

Father spend seven days incarcerated after he had served just two days of his mandatory sentence. *See* Trial Court Op., 10/31/24, at 46-49.

As this Court has observed on numerous occasions,

an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

*Warmkessel v. Heffner*, 17 A.3d 408, 412-13 (Pa. Super. 2011) (citation and quotation marks omitted). However, there are several well-recognized exceptions to the mootness doctrine. Specifically, Pennsylvania courts have recognized an exception to the mootness doctrine when a litigant remains subject to the court-ordered provisions that led to the original finding of contempt, since it may subject them to future sanctions on the same grounds. *See Barrett v. Barrett*, 368 A.2d 616, 619 n.1 (Pa. 1977) (holding that the mootness exception applied even though contemnor's imprisonment sanction had concluded, since he remained "subject to [] orders of support and a failure to comply with them might again subject him to contempt proceedings"); *Warmkessel*, 17 A.3d at 413 (same).

We acknowledge that the trial court suspended the terms of the September 6, 2022 order that originally prohibited Father from engaging in alienation and disparagement. *See* Order, 6/3/24, at ¶ 1. Nonetheless, he remains subject to a substantially similar court-ordered prohibition against

alienation set forth in the trial court's June 3, 2024 interim custody order. **See** Order, 6/3/24, at ¶ 5 (providing that Parents are "expressly prohibited" from "ridiculing, mocking, or otherwise making any negative statements" concerning the other parent or "taking any action that could reasonably be expected to adversely affect their children's view or opinion of the other party"). While not identical in terms of verbiage, we find that this clause enacts functionally identical restrictions on Father's behavior, *i.e.*, forbidding him from disparaging actions toward Mother. **Compare** Custody Order, 9/6/22, at Appendix "A" ¶ 3 **with** Trial Ct. Order, 6/3/24, at ¶ 5.

Accordingly, any further failure by Father to abide by the trial court's prohibition against alienation and disparagement could result in additional contempt proceedings. Under the procedural circumstances presented by this case, we conclude that the aforementioned exception to the mootness doctrine applies, as Father remains subject to the same court-imposed prohibitions against alienation and disparagement, which presents the potential for future contempt proceedings. **See, e.g.**, **Barrett**, 368 A.2d at 619 n.1; **Warmkessel**, 17 A.3d at 413. Furthermore, this Court has held that "[w]here the trial court acts beyond its authority by failing to afford contemnors their procedural due process rights, the appeal will not be considered moot." **Ingebrethsen v. Ingebrethsen**, 661 A.2d 403, 404-05 (Pa. Super. 1995). We conclude that, due to confusion regarding whether the contempt proceedings were civil or criminal, the trial court failed to provide Father with

the required procedural due process rights, thereby satisfying an exception to the mootness doctrine, and we will address the merits of Father's claim that the trial court erred by imposing a mandatory prison sentence as a sanction for civil contempt.

A brief review of Pennsylvania precedent concerning contempt proceedings is warranted here. Pennsylvania courts "possess an inherent power to enforce their orders by way of the power of contempt." **Adams o/b/o T.E.A. v. Adams**, 326 A.3d 107, 112 (Pa. Super. 2024) (quoting **Com., Dep't of Env't Prot. v. Cromwell Twp., Huntingdon Cnty.**, 32 A.3d 639, 653 (Pa. 2011) (citation omitted and some formatting altered)). Contempt proceedings under Pennsylvania law may be either criminal or civil in nature. **See County of Fulton v. Secretary of Commonwealth**, 292 A.3d 974, 1027 (Pa. 2023). However, "there is nothing inherent in a particular contemptuous act that classifies such act as either criminal or civil contempt. Rather, the distinction between the two is the court's dominant purpose in using the contempt power." **Diamond v. Diamond**, 792 A.2d 597, 600 (Pa. Super. 2002) (citation omitted).

Stated broadly, the "dominant purpose is to punish violation of a court order [criminal contempt] or to coerce into compliance with the order [civil contempt]." **County of Fulton**, 292 A.3d at 1004. More pointedly, the "[d]ominant purpose of coercion or punishment is expressed **in the sanction**

- 10 -

**imposed.**" ***Crozer-Chester Medical Center v. Moran***, 560 A.2d 133, 137

(Pa. 1989) (citation omitted and emphasis added). Specifically,

> [a] civil adjudication of contempt coerces with a conditional or indeterminate sentence of which the contemnor may relieve himself by obeying the court's order, while a criminal adjudication of contempt punishes with a certain term of imprisonment or a fine which the contemnor is powerless to escape by compliance.
>
> The civil-criminal classification of contempt exists solely for determination of a contemnor's procedural rights and a court's sentencing options. Quite simply, a contemnor who will be sentenced to a determinate term of imprisonment or a fixed fine, which he is powerless to escape by purging himself of his contempt, is entitled to the essential procedural safeguards that attend criminal proceedings generally.

***In re Martorano***, 346 A.2d 22, 28-29 (Pa. 1975) (citations omitted and

formatting altered).

Thus, "[t]he characteristic that distinguishes civil from criminal

contempt is the ability of the contemnor to purge himself of contempt by

complying with the court's directive." ***Colbert v. Gunning***, 533 A.2d 471,

472 (Pa. Super. 1987). To that end, "[e]very order which imposes punishment

for civil contempt should state the condition upon which fulfillment will result

in the release of the defendant or the remission of the fine." ***Knaus v. Knaus***,

127 A.2d 669, 673-74 (Pa. 1956). With specific reference to imprisonment

based upon a finding of civil contempt, our Supreme Court has explained:

> Before a defendant may be committed for civil contempt, it is essential that it be clear what is required of him in order to purge himself of the contempt, and the commitment order should state the condition which when complied with will release him. In the absence thereof, a commitment for civil contempt is improper.

- 11 -

*Id*. at 674. Indeed, it is axiomatic that a litigant adjudged to be in civil contempt "holds the keys to the jailhouse door." ***Diamond v. Diamond***, 715 A.2d 1190, 1194 (Pa. Super. 1998).

Here, it is clear the trial court intended to find Father in civil contempt with the objective of preventing Father from alienating the Children from Mother. The trial court's own statements are instructive on this point:

> The [c]ourt is extremely aware of the difference between criminal contempt and civil contempt. This [c]ourt understands that civil contempt is intended to coerce somebody into compliance with a court order. In this case, that coercion must be coercion that will get [Father] to stop and his promise to stop is not good enough.

N.T., 9/11/24, at 27.

However, the trial court imposed a mandatory seven-day term of imprisonment, which Father was powerless to escape regardless of whether he chose to begin complying with the court-ordered prohibitions against alienation. ***See*** Trial Ct. Order, 9/12/24, at ¶¶ 1-3. As noted above, there is a dearth of evidence indicating that Father remained in violation of the underlying custody provisions at the time these sanctions were imposed. ***See*** Trial Ct. Order, 8/12/24, at ¶¶ 5-23 (indicating that Father's allegedly contemptuous actions took place between October 2023 and May 2024).

This Court has explained that "[i]f the contempt consists solely of a past act, the only allowable judicial response is punitive, and any contempt adjudication must be criminal." ***Cipolla v. Cipolla***, 398 A.2d 1053, 1055 (Pa. Super. 1979) (citing ***Martorano***, 346 A.2d at 29 n.19); ***see also Bruzzi v.***

***Bruzzi***, 481 A.2d 648, 651 (Pa. Super. 1984) (stating that "[a] civil label is inappropriate when the court is attempting to punish the contemnor for past acts of misbehavior rather than setting forth the conditions of compliance . . . and conditioning punitive measures on failure to comply therewith") (citation omitted). Instantly, the contempt findings and sanctions issued by the trial court in this case were not calculated to address some ongoing defiance on Father's part, but were instead focused upon punishing him for his prior transgressions in these proceedings.

The trial court's imposition of a mandatory and unconditional term of imprisonment has similarly significant implications. Specifically, our case law provides that a court's imposition of the punitive sanction of mandatory imprisonment indicates that the underlying contempt proceedings are criminal. ***See Ingebrethsen***, 661 A.2d at 405 (holding that trial court's imposition of a mandatory jail sentence as a sanction for contempt indicated that the proceedings and underlying order were criminal in nature); ***see also In re Civil Contempt***, 1568 EDA 2023, 2024 WL 4274723, at *8 (Pa. Super. filed Sept. 24, 2024) (*per curiam*) (unpublished mem.) (explaining that a "definite term of incarceration . . . is not permissible in civil contempt

proceedings absent a purge condition" (citing **Wetzel v. Suchanek**, 541 A.2d 761, 763-64 (Pa. Super. 1988)).[5]

Viewed through the lens of the above-cited case law, we conclude that these contempt proceedings were criminal in nature. We do not doubt the veracity of the trial court's stated intent. **See** N.T., 9/11/24, at 27. Nonetheless, "[t]he purpose of the court to coerce compliance was ancillary and cannot work to transform the proceeding from criminal to civil."[6] **Crozer-Chester**, 560 A.2d at 138 (concluding imposition of a "fixed" sanction "as a result of past violations" of court order indicated the subject contempt proceeding was "criminal in nature" and not civil). Indeed, our Supreme Court has found the imposition of punitive measures that fail to empower contemnors to "escape" their punishment must be categorized as criminal, despite the presence of "procedural indicia" of civil contempt.[7] **Id.** at 138; **see also Knaus**, 127 A.2d at 674 (same).

_____

[5] We may cite to this Court's unpublished memoranda filed after May 1, 2019 for persuasive value. Pa.R.A.P. 126(b).

[6] Indeed, "[a] judgment in a civil contempt proceeding for the benefit of a private complainant will, of course, incidentally vindicate the authority of the court just as on the other hand a criminal contempt judgment, which is punitive, may often advance private interests." **Brocker v. Brocker**, 241 A.2d 336, 340 (Pa. 1968). Nonetheless, "the test is the dominant purpose, not the incidental result" of the court's contempt finding. **Id**.

[7] The following procedural elements are generally indicative of civil contempt, as opposed to criminal contempt: (1) the complainant is a private person as opposed to the government or a governmental agency; (2) the original
*(Footnote Continued Next Page)*

- 14 -

We further conclude that the subject proceedings constituted indirect criminal contempt, which our Supreme Court has explained as follows:

> A direct criminal contempt consists of misconduct of a person in the presence of the court, or so near thereto to interfere with its immediate business, and punishment for such contempts may be inflicted summarily. An indirect criminal contempt consists of the violation of an order or decree of a court which occurs outside the presence of the court.

*Knaus*, 127 A.2d at 671 (citations omitted and formatting altered). Since Father's complained-of actions occurred outside of the trial court's presence, these proceedings sound in indirect criminal contempt. *See Commonwealth v. Boyer*, 282 A.3d 1161, 1163 n.1 (Pa. Super. 2022).

Stated as simply as possible, "[c]riminal contempt is a crime. As in the case of any other crime, those accused of indirect criminal contempt are

_____

contempt action is filed as a continuation of the underlying matter, as opposed to a separate and independent action; (3) the contempt finding affords relief to a private party; (4) the relief requested is primarily for the benefit of the complainant; and (5) the contemptuous acts complained of are primarily civil in nature and do not themselves constitute crimes. *Crozer-Chester*, 560 A.2d at 138 (citing *Knaus*, 127 A.2d at 673).

As noted above, the mere presence of these factors in a case will not transform the character of plainly criminal contempt proceedings: "We acknowledge that . . . the procedural indicia of civil contempt are unquestionably present. Nevertheless, . . . the punishment levied here must be disapproved because the order contains no provision which empowered Appellant to escape it once it was imposed." *Crozer-Chester*, 560 A.2d at 138; *see also Knaus*, 127 A.2d at 674 (same). Here, many (if not all) of these procedural indicia are unquestionably present. Nonetheless, the criminal character of the trial court's sanctions is evident upon the face of the record as detailed in our analysis above. Thus, we conclude that the mere presence of these procedural factors does not undermine our holding. *See id*.

provided safeguards which statute and criminal procedures afford." ***Crozer-Chester***, 560 A.2d at 137. Specifically, a litigant accused of indirect criminal contempt is entitled to many of the "essential procedural safeguards that attend criminal proceedings generally," including the right to be notified of the allegations, the right to prepare a defense and be heard, and the right to the assistance of counsel. ***Commonwealth v. Bartic***, 303 A.3d 124, 132 (Pa. Super. 2023). A finding of indirect criminal contempt requires sufficient proof that: (1) the court's order was definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; (2) the contemnor had notice of the order; (3) the act constituting the violation was volitional; and (4) the contemnor acted with wrongful intent. ***See Boyer***, 282 A.3d at 1167. Moreover, these evidentiary burdens must be established beyond a reasonable doubt. ***See Bartic***, 303 A.3d at 132.

Here, the trial court did not afford Father the procedural safeguards due to a criminal contemnor. Specifically, the trial court effectively denied Father the assistance of counsel during the first contempt hearing, wherein Father appeared *pro se* and without waiving his right to legal representation. ***See*** N.T., 5/30/24, at 5-8; N.T., 5/31/24, at 2-14; ***see also Commonwealth v. Akins***, 1356 WDA 2018, 2019 WL 2246260, at *3 (Pa. Super. filed May 24, 2019) (observing that a trial court's failure to conduct an "on-the-record colloquy" regarding waiver of right to counsel before allowing a defendant

accused of indirect criminal contempt to proceed *pro se* was "reversible error") (citing Pa.R.Crim.P. 121 ("Waiver of Counsel")).

The trial court also appears to have impeded Father's ability to present a viable defense to the underlying allegations by denying Father's request to present potentially exculpatory testimony from the Children's school principal via telephonic appearance pursuant to the Pennsylvania Rules of Civil Procedure in these criminal proceedings.[8] **See** Trial Ct. Order, 7/10/24, at 1-2; **see also, e.g.**, **Commonwealth v. Holloman**, 621 A.2d 1046, 1053 (Pa. Super. 1993) ("The right to offer testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense[.]" (quoting **Washington v. Texas**, 388 U.S. 14, 19 (1973))).

Perhaps most critically, however, the trial court plainly applied incorrect legal standards of proof in issuing its contempt ruling. Specifically, the trial court's opinion evinces that it applied standards of proof applicable to civil contempt proceedings, as opposed to those that govern indirect criminal contempt matters. **See** Trial Court Op., 10/31/24, at 15-16.

Based upon these procedural and legal errors, we conclude that the trial court abused its discretion and misapplied the law. **Godfrey**, 894 A.2d at 780. Specifically, the trial court's imposition of a mandatory term of incarceration, coupled with the nature of its contempt findings, compel us to

---

[8] Civil contempt in custody actions is governed by Rule 1915.12 of the Pennsylvania Rules of Civil Procedure. **See** Pa.R.C.P. 1915.12.

vacate the contempt orders entered by the trial court. *See Knaus*, 127 A.2d at 674 (reversing contempt finding wherein a litigant was sentenced to a mandatory term of incarceration for without the necessary procedural and legal safeguards attendant to criminal matters); *Ingebrethsen*, 661 A.2d at 405 (same). Therefore, we vacate the trial court's order and remand for further proceedings consistent with this opinion. *See Crozer-Chester*, 560 A.2d at 139.

In light of our disposition, we need not address the remainder of Father's arguments. *See Knaus*, 127 A.2d at 674.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/8/2025